Steven D. CATO and Onice Fields,
Appellants (Defendants below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1179S310.

Supreme Court of Indiana.

Nov. 8, 1979.

Havill & Arthur, Washington, for appellants.

Theo. L. Sendak, Atty. Gen., Rollin E. Thompson, Asst. Atty. Gen., Indianapolis, for appellee.

ON PETITION TO TRANSFER

HUNTER, Justice.

This case comes to us on a petition to transfer filed by the state based upon a claim of error in the decision of the Court of Appeals, First District, in regard to the issue of the sufficiency of the evidence to sustain Cato's conviction. Steven Cato and Onice Fields were both convicted by a jury of second-degree burglary. The Court of Appeals affirmed the conviction of Fields but reversed Cato's conviction because of the insufficiency of the evidence. *Cato v. State*, (1979) Ind.App., 389 N.E.2d 332. Their decision was based upon their determination that the evidence was insufficient to prove that Cato was involved in the burglary since there was no eyewitness identification of him and there were insufficient facts in the record from which to infer that Cato participated in the burglary.

We disagree, grant transfer, and affirm the convictions of both Cato and Fields.

The testimony from the record shows that on July 16, 1977, a store near Salem, Indiana, was broken into and a sizable quantity of firearms and ammunition was taken. A neighbor who lived about one-half mile from the store testified that on the afternoon of the burglary he had seen a car driving up and down the road past his house several times. He also saw a young man walking down the road and being picked up by the car on one of its passes by his house. He obtained the license number and a general description of this car and was able to identify Fields as the young man who was picked up by the car.

Two days later Fields was stopped in Georgia while driving this car and Cato was

riding with him. A search of the trunk revealed several of the firearms taken from the store in Indiana. Cato had the key to the trunk of the car in his pocket. Neither man had a driver's license; the car was registered to Fields's father.

The Court of Appeals found that this was sufficient evidence to support the conviction of Fields but was not sufficient as to Cato. They stated:

"The record shows that, although the neighbor testified that the car contained two male occupants, he could not identify Cato as one of the occupants. The only evidence against Cato was that he was a passenger in the car when Fields was stopped in Georgia and that he had the key to the car trunk in his pocket." *Cato v. State, supra* at 338.

■ We cannot agree with the Court of Appeals' conclusions on this issue of the sufficiency of the evidence. The evidence before the jury included a pair of boots and a door panel. At the trial, the prosecution introduced as evidence part of a door panel which had been kicked out of a door during the burglary of the store. A boot print was clearly visible on the door panel. A pair of leather boots was also introduced into evidence which had been worn by Cato when he was arrested in Georgia. Since the jury had the physical objects to examine, they were able to determine for themselves how closely the boots' soles matched the prints on the door panel.

We note that neither the defendant nor the state provided photographs of this evidence for the Court of Appeals to consider. In fact, none of the exhibits introduced at trial was included in the transcript when it was sent to the Court of Appeals.

■ However, since the record clearly indicates that there was evidence before the jury that was not in the record for the court's review, it was not proper for the reviewing court to make any conclusions or assumptions about that which was not in the record. When the sufficiency of the evidence is challenged, the burden is upon the defendant to convince the reviewing court that the evidence is insufficient. The

court cannot come to such a conclusion from a record that omits a portion of the evidence for the obvious reason that the omitted evidence may furnish the missing link, as it apparently did in the instant case.

■ It is well settled that in reviewing the sufficiency of the evidence, that evidence most favorable to the state, together with the reasonable and logical inferences to be drawn therefrom must be considered. When there is substantial evidence of probative value supporting the jury's verdict, the conviction will not be set aside. *Poindexter v. State*, (1978) Ind., 374 N.E.2d 509; *Grigsby v. State*, (1978) Ind., 371 N.E.2d 384; *Henderson v. State*, (1976) 264 Ind. 334, 343 N.E.2d 776. Therefore, we cannot uphold the Court of Appeals' decision in reversing on the issue of the insufficiency of the evidence when the record was incomplete. The sufficiency of the evidence to support the convictions of both Cato and Fields must be affirmed.

We have further examined the record and find that the Court of Appeals has correctly decided the remaining issue in the case. We therefore adopt the following from the opinion of Judge Lybrook:

"The defendants argue that certain evidence should not have been admitted at their trial for either of two reasons: 1) their initial stop by Georgia police was illegal because the police stopped them without probable cause and on mere suspicion alone; or 2) the subsequent search of their car was illegal because Fields' consent to the search was not freely and voluntarily given.

■ "In reviewing a trial court's determination of the validity of a search, the appellate tribunal considers the evidence favorable to the trial court's ruling and any uncontradicted contrary evidence, and upholds the trial court's ruling if it is supported by the evidence. *Bruce v. State*, (1978) Ind., 375 N.E.2d 1042.

"The record shows the following evidence concerning the stop and search of Fields' car by Georgia police. Two officers of the Newton County Sheriff's Department,

Newton County, Georgia, received radio dispatches from department headquarters to proceed to the Pony Express Diner to investigate an out-of-state black over green Buick automobile and its occupants who, according to some unnamed source, were attempting to sell firearms from the trunk of the car. The sale of firearms without a license is a crime in Georgia.

"One officer positioned his car behind a nearby sale barn where he could observe a car which fit the description and which was parked at the side of the diner. The other officer positioned his car along the road about one-fourth mile south of the diner. The first officer observed Fields and Cato leave the diner, open the trunk of the car, look into the trunk for a short time, get into the car, and proceed north with Fields driving.

"The officer who was parked south of the diner drove north and followed the car approximately a mile, then signaled it to pull over, which it did. Fields and Cato exited the car as the officer approached. Two other officers in two more sheriff's cars arrived on the scene.

"The officer who had stopped the car requested Fields' driver's license and identification from both Fields and Cato. Fields had no license and no identification; Cato had a Social Security card. The officer informed Fields he was under arrest for driving without a license. The officer asked the two what they were doing in Georgia and requested permission to look in the car trunk, advising Fields that he did not have to consent. Fields expressed his consent, either verbally or by nodding his head to Cato who took a key from his pocket and opened the trunk. Inside the trunk, the officers found firearms which had been stolen from a retail store near Salem in Washington County, and whose serial numbers had been entered in the National Crime Investigation Center information network. Some of these firearms were admitted into evidence after the trial court's denial of defendants' motion to suppress.

"initially, we must concede that the defendants are correct in their contention that the State failed to prove the existence of probable cause to arrest Fields and Cato when the police stopped their car. Probable cause for an arrest is defined to be facts and circumstances known to the arresting officer which would warrant a man of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense. *Luckett v. State*, (1972) 259 Ind. 174, 284 N.E.2d 738. We have held, however, that the record need not reveal that the arresting officer personally had in his mind knowledge sufficient to establish probable cause. *Francis v. State*, (1974) 161 Ind.App. 371, 316 N.E.2d 416.

"In *Francis*, we said, at 418:

" 'In our opinion, the existence of probable cause for an arrest should be determined on the basis of the collective information known to the law enforcement organization as a whole, and not solely on the personal knowledge of the arresting officer. The police force is considered as a unit and where there is a police-channel communication to the arresting officer and he acts in good faith thereon, the arrest is based on probable cause when such knowledge and information exist within the department.'

"The dispatch from sheriff's headquarters to the patrolman was apparently based on information or a 'tip' received from some third source. Probable cause in such instances may be established by showing the previously determined reliability of the informant or by the verification of extrinsic facts which import reliability to the tip sufficient to render reasonable the conclusion of the tipster. *Carson v. State*, (1975) 164 Ind.App. 24, 326 N.E.2d 624.

"In the case at bar, the above-recounted evidence stood alone. No testimony was offered to establish that anyone in the sheriff's department had any knowledge of the reliability of the informant, and the officer's personal observations of Fields and Cato merely leaving the diner and looking in the car trunk would not, in any way,

serve as sufficient verification to import reliability to the tip thus rendering reliable the conclusion of the tipster that Fields and Cato were committed or had committed a criminal offense.

"This lack of probable cause does not render the stop illegal, however, because we find that the officer made a lawful investigatory stop. In *Clark v. State*, (1977) Ind. App., 358 N.E.2d 761, we said, at 763:

"'Although [the defendant] asserts that the information was received from a source where credibility and reliability were not established, when acting upon information received in a radio dispatch, a police officer is not required to ascertain the reliability and credibility of the initial source of the information. Moreover he must of necessity rely upon the communication system of the police headquarters where, as here, the use of an automobile compels officers to act with greater speed and less hesitancy. *Manson, et al. v. State* (1967), 249 Ind. 53, 229 N.E.2d 801, *cert. denied*, 390 U.S. 995, 88 S.Ct. 1198, 20 L.Ed.2d 95. The reasonableness of an investigatory stop based upon information received in a radio dispatch must therefore be measured against the objective standard prescribed in *Terry v. Ohio* (1968), 392 U.S. 1, at 21–22, 88 S.Ct. 1868, at 1880, 20 L.Ed.2d 889, where the court stated:

"'"[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"'

"Upon receiving the dispatch, the officers proceeded immediately to the spot where the described vehicle was said to be located. They observed there a vehicle which fit the description, in addition to behavior on the part of its occupants which denoted an unexplained interest in the contents of the car's trunk where firearms were reported to be located. We hold that these facts would warrant a man of reasonable caution to believe an investigation was appropriate. A legal investigatory stop was made.

"Defendants next contend that Fields' consent to the search of his car was invalid, again for either of two reasons: 1) Fields was not advised of his Fourth Amendment rights and his right to counsel before he consented; or 2) his alleged consent was merely passive submission to a search that was going to occur whether or not he consented. Defendants rely solely on *Pirtle v. State*, (1975) 263 Ind. 16, 323 N.E.2d 634, and *Sayne v. State*, (1972) 258 Ind. 97, 279 N.E.2d 196, to support their contentions.

■ "Consent to a search validates the ensuing search when the consent is freely and voluntarily given. *Bruce v. State*, (1978) Ind., 375 N.E.2d 1042. The test for voluntariness in this context, as provided by the United States Supreme Court in *Schneckloth v. Bustamonte*, (1973) 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, is whether a defendant's will was overborne in a particular case by duress or coercion, express or implied.

■ "The determination of the voluntariness of an alleged consent to search is a question of fact to be determined from the totality of the circumstances surrounding its giving. *Schneckloth, supra; Bruce, supra*. No one circumstance has been found to be dispositive; many circumstances have been found to be relevant.

"In *Schneckloth, supra*, the U.S. Supreme Court held, in 412 U.S. at 248, 93 S.Ct. at 2059:

"'[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied . . . [W]hile the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.'

"*Schneckloth*, however, does not dispose of the defendants' argument that Fields' consent was not voluntary because he was

not advised of his Fourth Amendment rights prior to his consent because, at the time of the alleged consent, Fields was in custody, having been arrested for driving without a license. The U.S. Supreme Court disposed of this contention in *United States v. Watson*, (1976) 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598:

> " '[T]he fact of custody alone has never been enough in itself to demonstrate a coerced . . . consent to search. Similarly, under *Schneckloth*, the absence of proof that [the defendant] knew he could withhold his consent, though it may be a factor in the overall judgment, is not to be given controlling significance.'

■ "Fields also fails in his argument that his consent was not voluntary because he was not advised of his right to counsel prior to his consent. *Miranda* warnings are not a prerequisite to a voluntary consent to search; they relate to the compulsory self-incrimination barred by the Fifth Amendment and not to unreasonable searches and seizures proscribed by the Fourth Amendment. *United States v. Garcia*, (5th Cir. 1974) 496 F.2d 670; *State v. Williams,,* (La. 1977) 353 So.2d 1299; *State v. Rodriguez,* (1978) 20 Wash.App. 876, 582 P.2d 904. *Schneckloth, supra,* lists 'the lack of any advice to the accused of his constitutional rights' as one of the factors to be taken into account in determining whether a consent to search was voluntary.

"Fields' reliance on *Pirtle, supra,* to support his claim is ill-placed. After being arrested for possession of a stolen car, Pirle was read his *Miranda* rights while seated in a police car. He gave no waiver. After he arrived at the police station, he was again read his rights and again failed to waive them. Instead, he said he wanted to consult his attorney. Later, Pirtle heard the rights a third time and again gave no waiver. Finally, an officer asked Pirtle to consent to a search of his apartment. Pirtle signed a search waiver without having consulted an attorney. The search revealed evidence which incriminated Pirtle in a murder.

"The Indiana Supreme Court found that once Pirtle had requested to see his attorney, further questioning of him was impermissible. The consent to search was signed when an officer was questioning Pirtle at a time when no questioning should have been in progress, and was suppressed, therefore, as a product of a violation of Pirtle's *Miranda* rights under the Fifth Amendment.

"In the case at bar, Fields, although under arrest, had not been transported to sheriff's headquarters, had not requested to see an attorney, and had not had his *Miranda* rights violated by unlawful police interrogation.

■ "Fields' final contention is that his consent was merely the type of passive submission to a search found insufficient to show voluntary consent in *Sayne, supra.* Sayne was stopped by police because one headlight on his car was not functioning. As the stop was being made, officers saw Sayne raise his hand to the sunvisor area and then lower his hand. An officer asked Sayne to pull down the sunvisor and Sayne complied. To justify a subsequent search of the front seat area of Sayne's car, the State argued that Sayne's compliance with the request to pull down the sunvisor was consent to a search of the front seat area. The Supreme Court found the evidence showed nothing more than Sayne's passive submission to the search of the front seat and fell far short of proof of voluntary consent.

"In the case at bar, upon the officer's request for permission to search the truck of his car, Fields gave an affirmative response, either verbally or by nodding his head to Cato who, in full view of Fields, extracted the key to the trunk from his pocket and approached and unlocked the trunk. This is far more than passive submission; it is consent plus active cooperation.

"In summary, the record shows that, although Fields was in police custody, he was under arrest only for a traffic violation and was on a public highway and not in the confines of a police station. He was told that he could withhold his consent. The

record shows no overt act of force, no threat of force, no promises, no duress or coercion, express or implied. Any coercive element in the presence of three deputies and three sheriffs' cars is inconsequential and unavoidable, from a practical standpoint, in any official contact between the police and a citizen. We find that Fields freely and voluntarily consented to a search of the trunk of his car.

"The trial court correctly denied defendants' motion to suppress the physical evidence seized from the car trunk."

Transfer is granted, the opinion of the Court of Appeals is vacated, and the judgment of the trial court is in all respects affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.