Joel **STABENOW**, Appellant (Defendant),

v.

**STATE** of Indiana, Appellee (Plaintiff).

No. 2–985–A–282.

Court of Appeals of Indiana, Second District.

July 14, 1986.

Robert W. Hammerle, John S. Nimmo, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant Joel Stabenow (Stabenow) brings this interlocutory appeal from the trial court's denial of his motion to suppress evidence relating to charges of dealing in cocaine, a class A felony,[1] and possession of a controlled substance, a class D felony,[2] claiming that cocaine found in the trunk of his automobile was wrongly seized because the warrant authorizing the search of the automobile was issued on less than probable cause and that valium tablets found in his luggage were the product of an improper detention and nonconsensual search.

We affirm in part and reverse in part.

## FACTS

As presented at the much-continued suppression hearing, the evidence most favorable to the decision of the trial court reveals that on November 27, 1984, Indianapolis Police Officer Ronald Schmidt (Schmidt) and Indiana State Police Trooper Frederick Warren (Warren) were assigned to a multi-agency airport drug interdiction detail at the Indianapolis International Airport. Stabenow had apparently been under investigation by police authorities for some time because of his frequent short-duration flights to Florida and his behavior at the airport upon returning from those sojourns.

On the above date, Schmidt and Warren detained Stabenow after he returned on an airline flight from Florida. Schmidt and Warren, both plainclothes officers, stopped Stabenow at the curb outside the departure area of the terminal where he was waiting for a shuttle bus to his car, which was parked in the long term parking lot of the airport. Although both were armed, there is no indication either officer exhibited his firearm. The officers identified themselves and asked Stabenow if he would mind answering a few questions. Stabenow assented.

Stabenow denied having an airline ticket; however, when asked to produce a baggage claim check, he also produced a ticket stub

---

1. Ind.Code 35–48–4–1 (1982).

2. IC 35–48–4–7 (Supp. 1983).

in a name other than his own. According to Schmidt, "[a]t this time I asked if he would mind or consent to a uh, search of his luggage that he was carrying. And he verbally consented to that search." *Record* at 58. Schmidt further elaborated that "[p]rior to asking for the consent to search I advised him that the purpose of the questioning was concerning narcotics investigation." *Record* at 58. Although Warren disagreed, Schmidt indicated he informed Stabenow "[t]hat he was not being detained, that he could leave at anytime." *Record* at 59. Warren searched Stabenow's carryon luggage and found a vial of valium tablets secreted in a stick deodorant container. Stabenow admitted having no prescription for the valium and was placed under arrest. In response to Schmidt's question, Stabenow stated that he did not have a vehicle at the airport. However, Stabenow's automobile had been parked in the airport long term parking lot for several days and was under periodic police surveillance.

Stabenow's car was towed to a police garage. Later the same day, Warren prepared an affidavit seeking a search warrant for the vehicle and presented the same to a judge of the Marion County Municipal Court. In its entirety, the affidavit states:

"Frederick A. Warren, Police Officer swears or affirms that he believes and has good cause to believe that on November 27, 1984, a Mr. Joel L. Stabenow W/M was arrested at INternational [sic] Airport for two (2) counts of Violations of the INdiana [sic] Controlled Substance Act. Mr. Stabenow W/M has been under investigation by this officer for approximately one (1) month. At the time of Mr. Stabenow's arrest he was advised of his Miranda Rights and Mr. Stabenow stated he did not have a vehicle. Mr. Stabenow was observed leaving the airport on several occasions in a 1972 Green Chevrolet, bearing Indiana plate 48 E 9812 prior to November 27, 1984. Said plate is register [sic] to Joel L. Stabenow, R.R. # 2, Elwood, Indiana.

I am requesting to search Mr. Stabenow's vehicle for anyevidence [sic] of a conspiracy to violate the Indiana Controlled Substance Act."

*Record* at 13. At the suppression hearing, Warren testified this was the first probable cause affidavit he had personally prepared. He indicated the prosecutor's office in the county where he normally was assigned prepared the affidavit and presented the request to the magistrate. Moreover, Warren stated that he had additional information which would supplement that contained in the affidavit but presented none of that information to the judge, who issued the search warrant for the vehicle solely on the basis of the affidavit presented by Warren. Cocaine in an amount over three grams was found in the trunk of Stabenow's automobile.

Following the denial of Stabenow's motion to suppress, this interlocutory appeal ensued.

## ISSUES

Stabenow presents two issues for our consideration:

1. Did the trial court err by denying Stabenow's motion to suppress the cocaine obtained from the search of the trunk of his automobile?

2. Did the trial court err by denying Stabenow's motion to suppress the valium procured from a search of his luggage?

## DECISION

ISSUE ONE—Did the trial court err by denying Stabenow's motion to suppress the cocaine obtained from the search of the trunk of his automobile?

PARTIES' CONTENTIONS—Stabenow asserts that the search warrant is not valid because the affidavit was not supported by probable cause. Stabenow further argues that Indiana should reject any "good faith" exception to the exclusionary rule on the basis of the Indiana Constitution and IC 35-37-4-5 (Supp.1985). Even under the good faith exception to the exclusionary

rule, Stabenow argues, suppression remains the appropriate remedy in this case.

The State counters that the affidavit did in fact establish probable cause and thus supports the validity of the search warrant. However, assuming arguendo that the affidavit was insufficient to establish probable cause, the State contends the good faith exception to the exclusionary rule applies to prevent suppression of the cocaine.[3]

CONCLUSION—The search warrant was not supported by probable cause, and suppression of the evidence remains the appropriate remedy under the facts of this case.

This issue requires a two-part inquiry. First, we must ascertain whether the search warrant was issued on less than probable cause. If so, we must consider the appropriate remedy for that transgression.

 Turning first to the validity of the search warrant, it is axiomatic that a court of review will " 'not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.' " *Illinois v. Gates* (1983), 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (quoting *United States v. Ventresca* (1965), 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684). We have previously discussed the analysis utilized to review a magistrate's determination of probable cause:

> "While the quantity and nature of the constituent elements necessary to establish probable cause are inextricably related to each given set of facts, there are two basic questions pertinent to the determination of probable cause for a search under any set of facts: (1) *whether the particular items sought to be seized are sufficiently connected with criminal activity and (2) whether the items are to be found in a particular place.* If sufficient facts are presented so that a neutral and detached magistrate can make an affirmative response to these questions, probable cause may

be presumed to exist thus making the issuance of the search warrant reasonable."

*Layman v. State* (1980), Ind.App., 407 N.E.2d 259, 263, *trans. denied* (citation omitted) (emphasis supplied). *See also Carnes v. State* (1985), Ind.App., 480 N.E.2d 581, *trans. denied;* IC 35–33–5–2(a) (Supp.1985).

Our review of the probable cause determination is limited to an examination of the same information that was before the magistrate when the warrant was issued. *Ruth v. State* (1984), Ind.App., 462 N.E.2d 269, *trans. denied; Flaherty v. State* (1982), Ind.App., 443 N.E.2d 340, *trans. denied.* In this instance, the only information presented to the magistrate was that contained in the affidavit prepared by Warren.

We conclude that the information contained in the affidavit is insufficient to establish probable cause. Neither the facts set forth in the affidavit, nor any reasonable inference arising from those facts, create either a connection between the automobile and any criminal activity or a possibility that evidence of a conspiracy to violate the controlled substance laws would be found in the automobile. The affidavit reveals that Stabenow was arrested at the Indianapolis airport for some unspecified violation of the controlled substance laws. It also divulges that Stabenow was seen *on earlier occasions* leaving the airport in a car. Finally, the affidavit establishes that Stabenow, at the time of his arrest, denied having a car. The information in the affidavit does not disclose the location of Stabenow's car at the time of his arrest. Thus, the magistrate could not know whether the car was even at the airport or at some other location. The affidavit neither reveals why Stabenow had been under investigation for a month previous to his arrest, nor does it reveal that Stabenow used the automobile in connec-

---

**3.** The State, in its brief, did not attempt to justify the search of the automobile as either a search incident to an arrest or an inventory search. Those theories are not before this court for consideration.

tion with any criminal act. Moreover, it does not establish that Stabenow had any contact with his car on the date of his arrest. The mere driving of a car on previous occasions, without more, does not create any reasonable inference that the automobile was connected with criminal activity or that any evidence of criminal activity would be found in the automobile.

In summary, the affidavit fails to generate any connection between the automobile and a violation of the controlled substance statutes. Nothing is contained therein from which the magistrate could conclude that any evidence of a violation of the controlled substance act would be discovered in Stabenow's automobile. *See Flaherty, supra* (affidavit failed to establish that defendant's apartment was in fact the location of the criminal activity in an apartment building for which a search warrant was sought). Having determined that the affidavit failed to establish probable cause, we must now consider the appropriate remedy for the issuance of a defective warrant.

■ Until recently, the lack of probable cause to support the issuance of a search warrant automatically resulted in the complete suppression of any evidence obtained pursuant to that warrant under the exclusionary rule. *See, e.g., Ruth, supra; Flaherty, supra.* In *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, the United States Supreme Court announced a good faith exception to the exclusionary rule. Despite Stabenow's protestations to the contrary, the Indiana courts have adopted and applied the good faith rule of *Leon. Blalock v. State* (1985), Ind., 483 N.E.2d 439; *Matter of M.R.D.* (1985), Ind.App., 482 N.E.2d 306. In *M.R.D.,* Judge Ratliff summarized the effect of *Leon:*

"The Fourth Amendment exclusionary rule was modified in *Leon* to permit the use, in the prosecutor's case-in-chief, of evidence seized in good faith reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. Justice White, writing for the

*Leon* majority, pointed out however that exclusion remains appropriate where:

....

3. the affidavit on which the warrant is based is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable';

4. the warrant is so facially deficient (by failing to particularly describe the place to be searched or the items to be seized) that it could not be reasonably relied upon by the executing officers."

*M.R.D., supra,* at 310 (citations omitted). In *Leon,* the Court declared that the raison d'etre of the good faith exception is to further the purpose of the exclusionary rule, and that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon, supra,* 104 S.Ct. at 3418. The Court concluded that the remedy of suppression should be applied only to those cases in which it will further the rationale of the exclusionary rule. The Court cautioned:

"We do not suggest, however, that exclusion is always inappropriate in cases where an officer has obtained a warrant and abided by its terms.... [T]he officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued."

*Id.* at 3421 (citations omitted) (footnotes omitted).

The affidavit produced by Warren is so lacking in indicia of probable cause that a law enforcement officer could not claim objectively reasonable reliance upon it. The Court, in *Leon,* emphasized that "[t]he objective standard we adopt, moreover, requires officers to have a reasonable knowledge of what the law prohibits." *Id.* at 3420 n. 20. The principle that a logical connection must be shown between the

items to be seized and the place to be searched so as to establish probable cause is a basic concept within the reasonable knowledge of a police officer. This is a core concept of criminal jurisprudence which is found in both case law and statute. *See Gates, supra; Layman, supra;* IC 35-33-5-1 (1982). Under the circumstances, we must conclude the affidavit is so facially lacking in indicia of probable cause that the officer could not claim reasonable reliance upon it; thus, suppression of the evidence remains the appropriate remedy.

ISSUE TWO—Did the trial court err by denying Stabenow's motion to suppress the valium procured from a search of his luggage?

PARTIES' CONTENTIONS—Stabenow contends he was the victim of an illegal detention and seizure because the search of his carryon luggage was effected without the benefit of a warrant. Further, Stabenow asserts that any alleged consent was not voluntarily given, but was the product of an illegal stop.

The State responds that the search of Stabenow's carryon luggage was proper because Stabenow freely consented to the search.

CONCLUSION—Stabenow validly consented to the search of his carryon luggage.

█ One may validly consent to a search conducted without a warrant and in the absence of probable cause or exigent circumstances. *Florida v. Royer* (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229; *Sayne v. State* (1972), 258 Ind. 97, 279 N.E.2d 196. "[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Royer, supra,* 460 U.S. at 497, 103 S.Ct. at 1324. The voluntariness of a defendant's consent is ascertained by examining whether a defendant's will was overcome by duress or coercion, either express or implied. *Smith v. State* (1982), Ind., 432 N.E.2d 1363; *Cato*

*v. State* (1979), 272 Ind. 102, 396 N.E.2d 119. "The determination of the voluntariness of an alleged consent to search is a question of fact to be determined from the totality of the circumstances surrounding its giving. No one circumstance has been found to be dispositive; many circumstances have been found to be relevant." *Cato, supra* at 108-09, 396 N.E.2d at 123 (citations omitted).

█ Here, the totality of the circumstances supports a determination that Stabenow voluntarily consented to the search of his carryon luggage. We are unpersuaded by his argument that any consent was vitiated by·an illegal detention. The United States Supreme Court has approved "temporary detention for questioning on less than probable cause where the public interest involved is the suppression of illegal transactions in drugs or of any other serious crime." *Royer, supra,* 460 U.S. at 498-99, 103 S.Ct. at 1324. *See also United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497. Such a detention must be temporary, lasting no longer than required to accomplish the purpose of the stop, and employ the least intrusive investigatory methods reasonably available to confirm or dispel a law officer's suspicions. *Royer, supra.* In *Royer,* a temporary detention and consensual search of luggage was converted to an illegal search and seizure when the police asked the defendant to accompany them to a small, isolated interrogation room where the defendant was alone with two officers. The police possessed defendant's ticket (thus preventing him from boarding his plane), his identification, and his luggage. Furthermore, the defendant was never informed that he was free to leave if he so chose. By contrast, Stabenow was stopped at the curb outside the departure area of the airport terminal after the apparent completion of his travels. He was questioned there in full, public view by two plainclothes police officers. While both officers were armed, there is no indication whatsoever that weapons were exhibited at any time. In addition, Schmidt testified

that Stabenow was informed "[t]hat he was not being detained, that he could leave at any time." *Record* at 59. Unlike the factually distinct *Royer* case, there was no illegal detention here to taint Stabenow's consent.

Likewise, we are unpersuaded by Stabenow's argument that his consent was merely passive submission to a display of authority as in *Sayne, supra,* when a defendant, who was stopped for a faulty automobile light, pulled down a sunvisor at a police officer's direction and revealed hidden marijuana. There was no evidence that force, or the threat of force, was ever used with Stabenow or that the questioning of the officers exceeded the scope or the purpose of their stop. Moreover, when one officer heard the rattling of something in the deodorant stick container, it was Stabenow who showed the officer how to remove the hidden prescription vial containing the valium.

Thus, the totality of the circumstances supports a determination that Stabenow voluntarily consented. Under these facts, the trial court did not err by denying Stabenow's motion to suppress the valium obtained in the search of his carryon luggage.

This cause is affirmed in part, reversed in part, and remanded with instructions to grant Stabenow's motion to suppress the evidence found in the search of his automobile.

SULLIVAN and RATLIFF (sitting by designation), JJ., concur.