**Rene RIOS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0105–CR–265.

Court of Appeals of Indiana.

Jan. 31, 2002.

Ellen M. O'Connor, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

## Case Summary[1]

In this interlocutory appeal, Rene Rios challenges the denial of his motion to suppress evidence, including cocaine and marijuana, seized at his residence pursuant to an anticipatory search warrant. We affirm.

## Issues

Rios presents two issues for our review, which we restate as:

I. whether the search warrant for a package addressed to Rios lacked probable cause because it was detained for a canine sniff without reasonable suspicion that the package contained contraband; and

II. whether the anticipatory warrant served at Rios' residence lacked probable cause because the package search warrant, the execution of which revealed suspected cocaine in the package, was deficient and was the sole basis for the anticipatory warrant.

## Facts

On July 15, 2000, Officer Joe Brannon of the Indianapolis Police Department was examining packages at a private shipping company when one addressed to Rios caught his eye. He deemed it suspicious because it had a handwritten label, was sent next day air, was paid for in cash, smelled like dryer sheets, and came from a "source area for the distribution of narcotics." [2] Appendix p. 51. The package then was placed with at least three other packages at the shipping company and was subjected to a sniff test by a trained narcotics canine. The dog alerted to the package. On the basis of the dog alert and the observations of Officer Brannon, a magistrate signed a search warrant at 8:45

a.m. to open the package, which appeared to contain cocaine when opened at 8:55 a.m.

Some of the cocaine was then repackaged, and Officer Brannon applied for an anticipatory search warrant for the premises where the package was to be delivered and the person who accepted the package. The warrant was approved, and it was executed after the package was delivered to and accepted by Rios at approximately 11:45 a.m. Officers seized marijuana, cocaine, two handguns, and miscellaneous records from the residence. Rios was charged with one count of possession of cocaine, one count of dealing in marijuana, and one count of possession of marijuana. He moved to suppress the evidence seized pursuant to the search warrants. After conducting a hearing at which no evidence was presented, the trial court denied the motion. We have now agreed to consider an interlocutory appeal from the denial of Rios' suppression motion.

## Analysis

A reviewing court is to focus on whether a "substantial basis" existed for a warrant authorizing a search or seizure, and doubtful cases are to be resolved in favor of upholding the warrant. *Houser v. State*, 678 N.E.2d 95, 98 (Ind.1997). "Reviewing court" for these purposes includes both the trial court ruling on a motion to exclude the seized evidence and the appellate court reviewing that decision. *Id.* We review the trial court's "substantial basis" determination de novo. *Id.* We give significant deference, however, to the probable cause determination of the magistrate who initially issued the search warrant, focusing on whether reasonable inferences drawn from the totality of the evidence support the determination. *Id.* at 99. "A

---

1. We hereby deny Rios' request for oral argument.

2. The package came from an address in South Gate, California.

presumption of validity of the search warrant exists, and the burden is upon the defendant to overturn that presumption." *Snyder v. State*, 460 N.E.2d 522, 529 (Ind. Ct.App.1984).

### I. Package Search Warrant

■ Rios first claims that the search warrant that allowed the package addressed to him to be opened before its delivery was deficient. He asserts that the facts posited or sworn to by officer Brannon—that the package was sent next day air, had a handwritten label, was paid for in cash, smelled like dryer sheets, and came from an address in South Gate, California—could not have provided probable cause to search the package or even reasonable suspicion to seize it. We tend to agree that these facts alone are consistent with innocent, not criminal, activity, especially where neither the probable cause affidavit reciting these facts nor anything in the record gives any indication of why these seemingly innocent characteristics created some level of suspicion that the package contained narcotics. We will assume for purposes of this opinion that the recital of these facts alone could not have provided probable cause to search the package or even that there was reasonable suspicion to seize it.

■ The alert of a dog trained to detect narcotics, however, is by itself sufficient to provide the probable cause necessary to obtain a search warrant to open a package. *See Neuhoff v. State*, 708 N.E.2d 889, 891 (Ind.Ct.App.1999). Additionally, smell testing by a trained dog is not a search within the meaning of the Fourth Amendment. *Id.* No level of suspicion thus was required to justify the canine sniff of Rios' package. Nevertheless, Rios argues that officer Brannon "seized" the package within the meaning of the Fourth Amendment when he removed the package

from wherever he first found it and placed it alongside several other packages so that it could be subjected to the canine smell test, and that this "seizure" required reasonable suspicion that the package contained narcotics.

Rios cites *U.S. v. Johnson*, 171 F.3d 601 (8th Cir.1998), in support of his claim that the package addressed to him could not be set aside and subjected to a canine sniff without some reasonable, articulable suspicion for doing so. In that case, the Eighth Circuit did say, "[l]aw enforcement authorities must possess a reasonable suspicion based on articulable facts that a package contains contraband before they may detain the package for investigation." *Johnson*, 171 F.3d at 603. For this proposition, the court cited *U.S. v. Van Leeuwen*, 397 U.S. 249, 252–53, 90 S.Ct. 1029, 1032, 25 L.Ed.2d 282 (1970). Although *Van Leeuwen* does mention the "suspicious" nature of the first-class mail packages at issue as justifying their twenty-nine hour detention in that case, we respectfully disagree that *Van Leeuwen* supports the Eighth Circuit's holding in *Johnson*. We do not read *Van Leeuwen* so broadly as to impose a "reasonable suspicion" requirement for any detention, however brief, of a mailed package for purposes of further law enforcement investigation.

In fact, the *Van Leeuwen* court never undertook to decide whether the facts of the case created "reasonable suspicion" that the packages contained contraband before their detention. It only noted the packages were "suspicious" without stating whether such suspicion was "reasonable," and expressly distinguished the detention of a mailed package for further investigation from a protective sweep for weapons upon the existence of "reasonable suspicion." *Id.* at 252, 90 S.Ct. at 1032 (citing *Terry v. Ohio*, 392 U.S. 1, 20–27, 88 S.Ct. 1868, 1879–83, 20 L.Ed.2d 889 (1968)).

The Court stated that *Terry* "went further than we need go here," *id.*, which we take to strongly imply that "reasonable suspicion" is *not* necessarily required to detain a mailed package for further law enforcement investigation in every case. The *Van Leeuwen* opinion also held that upon the detention of the packages,

> [t]here was at that point no possible invasion of the right "to be secure" in the "persons, houses, papers, and effects" protected by the Fourth Amendment against "unreasonable searches and seizures." Theoretically ... detention of mail could at some point become an unreasonable seizure of "papers" or "effects" within the meaning of the Fourth Amendment. Detention for 1½ hours ... for an investigation certainly was not excessive.... No interest protected by the Fourth Amendment was invaded by forwarding the packages the following day rather than the day when they were deposited. The significant Fourth Amendment interest was in the privacy of this first-class mail; and that privacy was not disturbed or invaded until the approval of the magistrate [for a search warrant] was obtained.

*Id.* at 252–53, 90 S.Ct. at 1032.

Contrary to the Eighth Circuit's view, we agree instead with the Ninth Circuit's assessment of *Van Leeuwen* and its implications for briefly detaining mailed packages for purposes of further law enforcement investigation. In *U.S. v. England*, 971 F.2d 419 (9th Cir.1992), the facts were similar to those in the case before us. There, law enforcement officials, apparently without any articulable suspicion, set aside two Express Mail packages to be

sniffed by narcotics search dogs. *Id.* at 420. The dogs alerted to the packages, search warrants were obtained, and the packages were opened and revealed cocaine. *Id.* The Ninth Circuit held there was no seizure of the packages by setting them aside to be subjected to canine sweeps, hence, law enforcement officials needed no suspicion before doing so. *Id.* at 421. The court distinguished *Van Leeuwen*, to the extent it may require *some* level of suspicion before detaining a package for a substantial period of time, on the basis that delivery of England's packages had not been "substantially delayed by their detention." *Id.*

We likewise hold that there is no seizure of a mailed package within the meaning of the Fourth Amendment when it is briefly detained for further law enforcement investigation and its delivery is not substantially delayed. Because there is no seizure, the Fourth Amendment is not implicated, and law enforcement officials need not possess "reasonable suspicion" before briefly detaining a package. This holding is consistent with the accepted proposition that "[a] 'seizure' of property ... occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)). Briefly setting aside a mailed package for further investigation is not "meaningful interference" with the recipient's possessory interests in the package where ultimate delivery of the package is not substantially delayed.[3] *Cf. U.S. v.*

---

**3.** We do note that in some cases we have said that detention of personal property for a canine sniff test is not prohibited *if* law enforcement authorities have reasonable suspicion to believe the property contains narcotics. *See,*

*e.g., Cannon v. State*, 722 N.E.2d 881, 884 (Ind.Ct.App.2000), *trans. denied; State v. Watkins*, 515 N.E.2d 1152, 1154–55 (Ind.Ct.App. 1987). These statements, however, were made in the context of cases where not only

*LaFrance,* 879 F.2d 1, 7 (1st Cir.1989) (holding where private carrier guaranteed delivery of package by noon, and where "there was neither interference with the package's normal course nor frustration of appellees' contractual expectations, the [package's] pre-noon 'detention' had but a *de minimis* impact on a nearly evanescent possessory interest."); *cf. also U.S. v. Ward,* 144 F.3d 1024, 1032–33 (7th Cir. 1998) (holding defendant's bag was not "seized" by law enforcement when it was removed from common luggage compartment of bus, where defendant had surrendered custody of bag to bus company and could not have had reasonable expectation that bag would not be handled, moved around, and taken off bus during the trip; "seizure" did occur when bag was detained long enough to cause its delivery to destination to be delayed because it would have to be placed on later bus).

We are satisfied that the temporary detention of Rios' package by officer Brannon so that it could be subjected to a canine smell test was such that there was no meaningful interference with Rios' possessory interest in the package. The face of the search warrant's probable cause affidavit reveals that Brannon discovered the next day delivery package addressed to Rios on the morning it was due to be delivered to Rios. The subsequent detention of the package for a canine sniff plainly was carried out expeditiously, as the search warrant based on the positive smell test was obtained and executed before 9:00 a.m. Additionally, the package was delivered to Rios before noon that day. We see no indication of substantial delay caused by detaining the package for the canine sniff, which supplied the necessary probable cause for the search warrant. There was no "seizure" of the package until, at the very earliest, the dog alerted to the package and police sought to obtain the search warrant, and thus Brannon did not need any amount of articulable suspicion to detain the package up to that point.

▮▮▮ Rios raises several other challenges to the package search warrant. First, he claims the "dog sniff alone could never support probable cause for this warrant" because the probable cause affidavit did not indicate that the dog had training in detecting the odor of controlled substances where the package had another distinct odor, namely dryer sheets. Appellant's Brief p. 18. We are convinced the probable cause affidavit's recitation of the dog's training is sufficient. It parallels the recitation of narcotics canine training that we approved in *Neuhoff v. State,* in that it states the dog is a certified Narcotic Detection Canine and has been active for five years, that she is re-certified annually, that she was trained in detecting by odor marijuana, cocaine, heroin, and methamphet-

---

was the person's possessory interest in the personal property at issue, but also the liberty of the person himself. *Cannon* involved the detention of the person's automobile following the completion of a routine traffic stop; *Watkins* involved the simultaneous detention of the person and the person's luggage after departing an airplane. Aside from the person himself being detained so that a canine sniff of the property could be accomplished, the person's immediate exercise of control over his personal property also was meaningfully interfered with by law enforcement in *Cannon* and *Watkins.* These two factors were also present and expressly noted by the Supreme Court in *U.S. v. Place,* 462 U.S. 696, 708, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983), upon which the *Watkins* panel based its holding. Here, by contrast, Rios' personal liberty was not infringed by setting aside the package for a canine sniff test, nor was his immediate ability to exercise personal control and possession of the package interfered with. The package was under the care and control of the private carrier and Rios was simply awaiting its delivery, which was not substantially delayed by law enforcement action.

amine, and that she has located controlled substances on approximately 300 occasions. *See Neuhoff*, 708 N.E.2d at 891. Implicit in such training and experience is that the dog has the ability to distinguish odors indicative of narcotics from other odors a package may carry. Probable cause requires only a fair probability of criminal activity, not a prima facie showing. *Jellison v. State*, 656 N.E.2d 532, 534 (Ind.Ct.App.1995). Given her training and experience, the dog's alert to Rios' package clearly established there was a fair probability that it contained drugs, and thus established the probable cause necessary for the warrant.

Rios also argues that the probable cause affidavit for the package warrant was an insufficient "bare bones" affidavit. Indiana Code Section 35–33–5–2(a) provides:

> [N]o warrant for search or arrest shall be issued until there is filed with the judge an affidavit:
>
> (1) particularly describing:
>
> (A) the house or place to be searched and the things to be searched for; or
>
> (B) particularly describing the person to be arrested;
>
> (2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:
>
> (A) the things as are to be searched for are there concealed; or
>
> (B) the person to be arrested committed the offense; and
>
> (3) setting forth the facts then in knowledge of the affiant or information based on hearsay, constituting the probable cause.

▮▮▮▮ "Upon receiving a request for a search warrant, the task of the issuing magistrate is to make a common sense determination, based on the totality of the circumstances, that there is a fair probability that a particular place contains evidence of a crime." *Houser*, 678 N.E.2d at 99. An affidavit demonstrates probable cause to search if it provides a sufficient basis of fact to permit a reasonably prudent person to believe that a search of the item or the premises will uncover evidence of a crime. *Utley v. State*, 589 N.E.2d 232, 236 (Ind.1992), *cert. denied*, 506 U.S. 1058, 113 S.Ct. 991, 122 L.Ed.2d 142 (1993). Rios asserts the affidavit for the package search warrant failed to state sufficient particularized facts to create probable cause that the package contained narcotics, primarily because much of the affidavit appears to be "boilerplate" language, with the facts particular to Rios' package inserted in bold by a word processing program. This alone does not make the affidavit insufficient to establish probable cause. The inserted facts clearly make the affidavit specific to Rios' package, as it describes the package and who found it (Brannon) in detail, states that the dog sniffed that package and alerted to it, and lists the dog's training and qualifications. These are sufficient particularized facts. We decline to require law enforcement authorities to retype probable cause affidavits from scratch every time one is required, as long as the affidavit contains sufficient facts specific to the search at issue to establish probable cause, as this affidavit did.

▮▮▮▮ Finally, Rios invokes Article I, § 11 of the Indiana Constitution as an independent basis for invalidating this search warrant. *See Peterson v. State*, 674 N.E.2d 528, 533 (Ind.1996), *cert. denied*, 522 U.S. 1078, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998). When considering claims under Article I, § 11, the reasonableness of the official behavior is our focus. *Moran v. State*, 644 N.E.2d 536, 539 (Ind.1994). We conclude there was no unreasonable

official behavior here. It reasonably should be expected that a package sent for delivery, whether through the United States Postal Service or a private carrier, is going to be repeatedly manipulated and handled during the normal course of its journey. Additionally, the package's outward characteristics are observable by anyone handling the package. Viewed in this context, it was not unreasonable for law enforcement authorities also to note the outward characteristics of Rios' package and briefly handle it so that it could be subjected to a canine sniff test. The search of Rios' package following the dog's alert to the package and acquisition of a warrant violated neither the federal and state constitutions nor Indiana Code Section 35–33–5–2.

## II. Anticipatory Search Warrant

After the package addressed to Rios was opened and police determined it likely contained cocaine, Officer Brannon applied for and received an anticipatory search warrant for the address on the package and Rios or anyone who might accept the package, to be executed when the package was delivered. Rios first challenges this particular warrant because of his claim that the search warrant for the package, which resulted in the discovery of the suspected cocaine that formed the basis for the anticipatory warrant, was defective. Having held the search of the package was carried out in accordance with the state and federal constitutions, we also reject Rios' claim of error on this point with regard to the anticipatory warrant.

Rios also argues the affidavit filed in support of obtaining the anticipatory warrant was, like the package warrant, "bare bones" and did not establish probable cause to search the residence and the recipient of the package. We note that in Indiana, "[w]here the reasonable inferences drawn from the totality of the circumstances establish that there is probable cause to search, a search warrant may be validly issued prior to the actual arrival of the matter to be seized at the premises to which the warrant is directed." *Marchetti v. State*, 725 N.E.2d 934, 936 (Ind. Ct.App.2000), *trans. denied.* Anticipatory search warrants are thus valid under Indiana Code Section 35–33–5–2. *Id.* We also reiterate that probable cause requires only a fair probability of criminal activity, not a prima facie showing. *Jellison*, 656 N.E.2d at 534. Probable cause does not require a demonstration that contraband will be found on the premises to be searched. *Beverly v. State*, 543 N.E.2d 1111, 1113 (Ind.1989). In determining whether an affidavit provided probable cause for the issuance of a search warrant, doubtful cases are to be resolved in favor of upholding the warrant. *Houser*, 678 N.E.2d at 98. Furthermore, we will not invalidate warrants by interpreting probable cause affidavits in a hypertechnical, rather than a commonsense, manner. *Foster v. State*, 633 N.E.2d 337, 342 (Ind. Ct.App.1994), *trans. denied* (quoting *Stabenow v. State*, 495 N.E.2d 197, 200 (Ind. Ct.App.1986)).

The affidavit for the anticipatory warrant stated in pertinent part:

> I, **Joe Brannon**, a law enforcement officer employed by the Indianapolis Police Department, swear or affirm that I believe and have good cause to believe that the following described property will have controlled substances within at a certain time in the future. THE PROPERTY Here after [sic] referred to as (THE PROPERTY) is described as follows:
>
> address of house: **2217 Groff, Indpls, IN 46222**

physical description: **Brown Cardboard Box, 11 × 13 × 1, bearing tracking # 813544300735**

This affiant bases his belief on the following information that I either have personal knowledge of or received from other law enforcement officers who had personal knowledge of the events:

On **July 15th 2000,** a search warrant was obtained to open parcel(s) described as follows:

addressed to: **R. Rios, 2217 Groff, Indpls, IN 46222**

sender's information: **Elias Diaz, 10505 Dorothy AVE, S. Gate[,] CA 90280**

which was/were found en route via a private parcel company addressed to THE PROPERTY described above. Upon serving that warrant on **July 15th** at **8:55 o'clock AM,** law enforcement officers opened the parcel(s) and found that it/they contained controlled substances, specifically suspected **CO-CAINE.** Officers resealed the parcel(s), and have arranged to make a controlled delivery of this/these parcel(s) to the address noted on the parcel(s), which is THE PROPERTY. This affiant expects that such delivery will be made on **July 15th 2000,** at approximately **11:00 o'clock AM,** by a law enforcement officer. This Affiant expects that such parcel(s) will be accepted by a person identifying himself/herself as **R. Rios** or an authorized agent of **R. Rios.** After that delivery is made, this affiant believes and has good cause to believe that probable cause will exist to believe that there will be **COCAINE,** a controlled substance, contained in THE PROPERTY, which would constitute evidence of a crime under the Indiana Uniform Controlled Substances Act. Through this affiant's training and experience as a law enforcement officer, I know that persons who import controlled substances often keep records of their transactions, additional quantities of controlled substances, packaging materials and other evidence of crimes under the Indiana Uniform Controlled Substances Act at the location they receive controlled substances.

Appendix p. 53.

In *Marchetti,* we upheld an anticipatory search warrant issued on the basis of a probable cause affidavit that shared several common characteristics with the affidavit filed in this case. The *Marchetti* affidavit alleged that heroin had been discovered in a package addressed to the defendant, which had been opened pursuant to a separate search warrant, and sought execution of the anticipatory warrant upon delivery and opening of the package to search the residence and anyone inside the residence for additional heroin, documents, and other indicia of heroin trafficking. 725 N.E.2d at 937. The *Marchetti* affidavit contained some elements that the affidavit here did not, including more detailed information as to how and why law enforcement authorities came to the conclusion that the package contained heroin and a statement that the package was fitted with a monitor that would indicate when the package was opened inside the residence. *Id.*

These differences do not mean the affidavit in this case was insufficient, particularly after reading it in a commonsense, not hypertechnical, manner, and resolving any doubts in favor of upholding the warrant. The affidavit plainly states that law enforcement authorities believed that a package containing cocaine, which had been examined pursuant to a search warrant, was being shipped to Rios. These facts permitted the reasonable inference that Rios may be trafficking in controlled substances and that further evidence of such trafficking might be found on his

person and in his residence.[4] The affidavit did not have to establish definitively that such evidence would be found there.

 Additionally, although it might have been beneficial if the affidavit indicated how law enforcement authorities came to the conclusion that the package contained suspected cocaine, this does not invalidate the warrant. The information that the package was inspected and was suspected to contain cocaine was obtained entirely through law enforcement channels. "Probable cause may be based on the collective information known to the law enforcement organization as a whole." *Williams v. State*, 528 N.E.2d 496, 500 (Ind.Ct.App.1988), *trans. denied.* This case thus differs from ones where police have obtained hearsay information from an outside informant that a person possesses or will possess controlled substances, in which the reliability of the information must be established by particularized facts in the affidavit, such as facts demonstrating some basis for the informant's knowledge. *See, e.g., Newby v. State*, 701 N.E.2d 593, 598 (Ind.Ct.App.1998); *see also* Ind.Code § 35–33–5–2(b). Rios introduced no evidence that would undermine confidence in the truthfulness of the statement that law enforcement officials inspected Rios' package and believed it contained cocaine. This asserted fact was not based on hearsay and so the heightened requirements for establishing the veracity of hearsay information were not implicated in this case. The anticipatory search warrant was properly issued based upon an affidavit that established probable cause, consistent with the federal and state con-

stitutions and our state statute governing probable cause affidavits.

## Conclusion

Officer Brannon did not "seize" Rios' package by briefly detaining it so that a narcotics canine could sniff it. That being the case, the following search of the package and the search of Rios' residence upon delivery of the package were carried out in accordance with the federal and state constitutions and Indiana Code Section 35–33–5–2. We affirm the denial of Rios' suppression motion.

Affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.

---

4. Rios in fact accepted the package. It is unclear whether his person was searched at that time pursuant to the anticipatory warrant. In any event, we need not resolve today whether the anticipatory warrant affidavit supplied probable cause to search any person who accepted delivery of the package, even if it was not Rios, because there was no evidence seized pursuant to such a search.