**Kenneth CULVER, Appellant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 45A04-8706-CR-00172.**

Court of Appeals of Indiana, Fourth District.

Feb. 17, 1988.

Rehearing Denied May 11, 1988.

---

William L. Touchette, Appellate Public Defender, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

Kenneth Culver appeals from his December 9, 1986 conviction for unlawful dealing in a controlled substance, a Class B felony,[1] for which he was given a ten-year sentence. Culver alleges the trial court erred when it overruled his motion to suppress evidence seized from his residence because the affidavit offered in support of the warrant failed to establish probable cause. We affirm.

### FACTS

On November 12, 1985 an Affidavit for Search Warrant was filed in the Lake County Court by Officer James Lawson. His affidavit stated, in relevant part, that

"[Affiant] swears that he believes and has good cause to believe that the following particularly described items:

1. Commando Mark 111 45 cal. sr# 18489 rifle

1. Smith and Wesson revolver

assorted narcotics, pills and capsules, and paranaphella [sic] are concealed in or about the following premises: 6517 Harrison st. Hammond, In. apt B corner house situated in the County of Lake, in said state and occupied by Kenneth Culver, and that said items are related to the following offense.

35–47–2–23 Sec. C convicted felon in Possession of a firearm

35–48–4–7 Possession of a controlled Substance

and that he believes and has good cause to believe

On 11–11–85 a confidential informant who has supplied reliable in the past related to this affiant that in the P.M. hrs. of 11–11–85 he saw, observed and handled a rifle to wit a Commando Mark 111 sr# 18489 and in addition he saw the subject Kenneth Culver with a Smith and Wesson revolver, This subject Kenneth Culver is a convicted felon, The confidential informant further related Kenneth Culver is selling narcotics to wit Percodan pills and has a large supply in his apt. The personal observations of this affiant indicate that Kenneth Culver is in fact selling narcotics. due to the high volume of persons entering the dwelling and leaving after a brief period of time." (Record at 59).

Based on the affidavit, a search warrant was issued and a search of Culver's apartment was executed that same day. The police found substances which were later determined to be Phendimetrazine pills, marijuana, and one substance that contained amphetamine. As a result of the search Culver was arrested and charged with unlawful dealing in a controlled substance.

Before trial Culver filed a motion to suppress the evidence; but, after an evidentiary hearing, the judge denied the motion. At trial Culver objected to the admission of the evidence, but his objection was overruled. Culver brings this appeal alleging his conviction should be vacated because it

---

1. IND.CODE 35–48–4–2.

rests on evidence obtained under a search warrant that was not supported by probable cause, and consequently that the search violated the Fourth Amendment.[2] He contends there were insufficient facts to support the credibility of the hearsay informant and to connect the items specified in the affidavit to his apartment. We will discuss these two issues together.

## DISCUSSION AND DECISION

■ To demonstrate probable cause to search premises, an affidavit must provide a sufficient basis of fact to warrant a reasonably prudent person to believe that a search of those premises will reveal evidence of a crime. *Woods v. State* (1987), Ind.App., 514 N.E.2d 1277 (citing *Carroll v. United States* (1925), 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543). An affidavit based on an informant's tip has been regarded as open to question since the tip is hearsay and is thus susceptible to concerns about perception and truthfulness. *See, Spinelli v. United States* (1969), 393 U.S. 410, 425, 89 S.Ct. 584, 593, 21 L.Ed.2d 637 (concurring opinion). If the tip is to provide a basis for a finding of probable cause the magistrate must have substantial reason to believe the information is reliable. Otherwise, the magistrate would be surrendering his authority to the informant, and possibly to an overeager law-enforcement officer. *Aquilar v. Texas* (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723.

The United States Supreme Court has provided guidance as to how this constitutionally required evaluation is to be made, and the Court has more recently recast the probable cause analysis pertaining to this area. In the case of *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, the Court abandoned the double demands for perception and veracity required under the so-called *Aguilar-Spinelli* test for informant reliability, and substituted a more flexible approach to making such an evaluation. The Court stated that while an informant's basis of knowledge and truthfulness are still important considerations, these two elements are to be viewed as no more than "relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations." *Gates, supra* at 230, 103 S.Ct. at 2328. The Court described the task of the magistrate as:

"... simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332.

The Court went on to warn that a magistrate should refrain from "excessively technical dissection of informant's tips", *Id.*, and from "judging bits and pieces of information in isolation." *Massachusetts v. Upton* (1984), 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721. The Court stressed the fact that informants' tips—coming as they do in many shapes and sizes and from various types of persons—are not to be evaluated under a neat set of legal rules but through a common-sense overall approach. *Gates, supra.*

In reviewing an affidavit this court will not conduct a *de novo* review. *Id.* Rather, our task is to insure that the magistrate had a "substantial basis for ... conclud[ing]" that the affidavit established probable cause. *Id.*, 462 U.S. at 238, 103 S.Ct. at 2332 (citing *Jones v. United States* (1960), 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697). We are not to take a grudging or negative attitude toward warrants, but we are to uphold a deferential standard of review so as "to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Upton, supra,* 466 U.S. at 733, 104 S.Ct. at 2088.

2. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. The Indiana Constitution, Article I, section 11, contains an almost identical provision.

Despite our adherence to this stringent restraint on our appellate role in reviewing affidavits, we find the affidavit at hand presents an uncomfortably close question as to the magistrate's determination of probable cause. The sufficiency of the affidavit hinges on the interplay of the following factors: (1) the affiant's statement that the informant had supplied reliable information in the past, (2) the affiant's statement that Culver was a convicted felon, (3) the tip stating the informant saw Culver firsthand with a Smith and Wesson revolver, (4) the tip stating Culver was selling narcotics—specifically Percodan pills—and had a large supply in his apartment, and (5) the affiant's observations upon keeping watch over the house where Culver resided. We will address each of these factors, but it is only through their interplay that any one bears significance on the finding of probable cause.

First, the affidavit states that the informant had provided reliable information in the past.[3] Such a self-serving label as "reliable" does nothing to provide the magistrate with facts from which to deduce the reliability of the source. It would be much preferable had the police told the magistrate what they knew about the informant, whether or not he had been cooperating in an ongoing investigation with them, and something more of his track record involving information which had led to arrests or convictions. *See, e.g., United States v. Laws* (D.C.Cir.1986), 808 F.2d 92, 100 at nn. 61 and 63. However, the fact the informant was known to the police and had proved himself reliable in the past does supply a smidgen of evidence as to the informant's veracity.

The affidavit also states that the informant saw Culver firsthand with a Smith and Wesson revolver. A firsthand observation is certainly preferable to a situation in which the informant obtained information indirectly.

Further, the fact the informant supplied such detail as to say he specifically saw Culver with a "Smith and Wesson" revolver strengthens the assessment of his credibility. For instance, the *Gates* court found that an anonymous letter that supplied many details indicated the informant had access to reliable information, and had either obtained the information from the Gateses directly or from someone they trusted. *Gates, supra.* Here, the fact the informant states he saw Culver with a Smith and Wesson revolver in all likelihood means that he saw him at close range.

This, too, however, may indicate the informant is one from the criminal milieu. Obviously, it is not as likely that a law-abiding citizen would witness such a circumstance or be present at such an event. But, as was pointed out in *Gates*, an informant's basis of knowledge (here his firsthand observation) may compensate for something less than a full demonstration of credibility.

Moreover, we have the additional information from the affiant that Culver is a convicted felon. This, combined with the firsthand observation of Culver handling a revolver,[4] is surely enough to heighten suspicion and warrant further police investigation. The Supreme Court has held that a suspect's past conviction favors a determination of probable cause in a way that unilluminating declarations about his reputation do not. *Spinelli, supra.*

Were we only apprised of the foregoing information we would have to say that, even in light of *Gates*, the affidavit would fail for lack of a connection between the alleged criminal activity or contraband and the place to be searched. The affidavit shows no connection between the revolver and a place where Culver was seen han-

---

**3.** Culver challenges the affidavit because it describes an informant "who has supplied reliable in the past," and does not state what it was that the informant supplied. However, we think such a reading does countermand the Supreme Court's stricture on "excessively technical dissection." A quick reference to the dictionary will reveal that an informer is "one that in-

forms: one who gives information." *WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY* (1976). Thus, the only reasonable interpretation of the affidavit is that the informant had supplied reliable *information* in the past.

**4.** IND.CODE 35–47–2–23.

dling it or was likely to be keeping it. There is also mention of a rifle, but the affidavit fails to show a connection between the rifle and either Culver or a place.[5] As Judge Buchanan pointed out in *Stabenow v. State* (1986), Ind.App., 495 N.E.2d 197, the basic principle that there must be a logical connection between the criminal activity and the place to be searched is a common core of criminal law, and no reasonably well-trained police officer could rely on an affidavit that did not establish such a connection.

But, we are not left without more. The affidavit goes on to state that the informant told police that Culver was selling narcotics—Percodan pills—and had a large supply in his apartment. Although we do not know how the informant knew Culver was selling drugs, that is, the basis for his knowledge, we have already established that he is known to be reliable to the police. As the *Gates* Court observed, when a particular informant is known for his reliability, his failure in a particular case to thoroughly describe his basis for knowing the information he supplies should not be an absolute bar to a finding of probable cause. *Gates, supra,* 462 U.S. at 233, 103 S.Ct. at 2329. And, again, the fact the informant supplied details about the kind of drugs (Percodan pills) and the size of Culver's supply (large) also tends to bolster his credibility. Likewise, the fact the informant said he saw Culver—likely in such close proximity that he could determine he had a particular kind of revolver—may infer the informant knew Culver well enough to have been in his apartment and have seen the drugs there.

The affidavit provides some corroboration, too, on the informant's story that Culver was selling drugs and had a supply in his apartment. Officer Lawson stated that he observed what appeared to be drug trafficking from the sight of a high volume of persons entering the dwelling and leaving after a brief period of time. This activity might appear to be innocent to some. But, when seen through the eyes of those who are trained in enforcing the law, certain conduct and activities take on significance that the unexperienced person might overlook. As the *Gates* Court pointed out, activity that may appear to be innocent can become suspicious in light of a tip. The Court also noted that the inquiry should not be whether particular conduct indicates guilt or innocence; rather, the inquiry should be about the degree of suspicion that attaches to certain types of noncriminal conduct. *Gates, supra* at n. 13. Certainly Officer Lawson's deduction Culver was selling drugs from his apartment could be made from the tip which he then corroborated by observing activity at Culver's dwelling which indicated to him drug activity.[6]

Culver insists, however, that we should discredit the officer's statement of corroborative evidence because the house in which he lived was a multiple dwelling and the observed activity could have been associated with another unit. The affidavit states that Culver lived at 6517 Harrison Street, Apt. B. The designation "Apt. B" would certainly indicate the house was a multiple dwelling having at least two units. But, in describing his observations, the affiant states only that he observed persons entering and leaving the "dwelling". It is true the affidavit does not state specifically the affiant saw persons entering and leaving Culver's apartment per se. This is indeed an ambiguity which could be resolved in either direction. The magistrate was free to construe the meaning of the statement, and—in light of the initial tip—he likely did construe it to mean the affiant saw persons entering and leaving Culver's apartment. In any case, the observation of a high

---

**5.** Again, the affidavit in this regard read:
"[the informant] saw, observed and handled a rifle to wit a Commando Mark 111 sr # 18489...."
He did not say he saw Culver with a rifle; he merely says he handled one himself.

**6.** Of course, it would have been more helpful had Officer Lawson explained his background and expertise in drug investigations. Further, he could have been more specific as to "the high volume of persons entering the dwelling and leaving after a brief period of time," by explaining how many people entered and exactly how much time was spent during their visits.

volume of persons entering and leaving the house, combined with the nature of the tip and the past reliability of the informant, would tend to persuade the magistrate toward a finding of probable cause.

In this case we have only bits and pieces of evidence tending to show probable cause, with no one bit or piece being conclusive. This was also true in *Gates* and in *Upton, supra,* a case in which the Court further construed *Gates.* As the Court pointed out in those instances, it was not a single piece of information that proved decisive, but the way in which the pieces fitted together that made for a showing of probable cause. Here, we have the information from an informant who had proved reliable before, the tip stating Culver, a convicted felon, had a certain type of revolver, an assertion of drug dealing that was bolstered by details, and corroboration by the affiant of highly suspicious activity at the house where Culver lived. We believe, therefore, that it was reasonable for the magistrate to have found the affidavit established probable cause. As the court stated in *Upton, supra:*

"Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.,* 466 U.S. at 734, 104 S.Ct. at 2089 (quoting *United States v. Ventresca* (1965), 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684).

Such are the circumstances in this case, but, for all of the reasons stated, we support the magistrate's decision.

Due to our finding that the affidavit is sufficient, we do not reach the question of the applicability of the good faith exception established in *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677.

Affirmed.

SHIELDS, P.J., concurs.

RATLIFF, C.J., concurs with separate opinion with which SHIELDS, P.J., concurs.

RATLIFF, Chief Judge, concurring.

I agree that the affidavit for search warrant in this case was at least minimally sufficient to meet constitutional requirements and, to that extent, concur in the opinion of Judge Miller.

However, even if the affidavit were insufficient, no cause for reversal would exist. The Supreme Court of the United States in *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, created a good faith exception to the exclusionary rule. In *Leon,* the court held that evidence obtained in violation of the Fourth Amendment by officers acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded. 468 U.S. at 926, 104 S.Ct. at 3423, 82 L.Ed.2d at 701. However, the *Leon* exception does not apply if, *inter alia,* the affidavit is so lacking in indicia of probable cause that no reasonably well trained officer could believe in its existence. Our supreme court has recognized the *Leon* rule in *Blalock v. State* (1985), Ind., 483 N.E.2d 439, where it found the probable cause affidavit to be sufficient, but stated that even if it were deficient the good faith exception articulated in *Leon* would have justified the search and seizure. In *Matter of M.R.D.* (1985), Ind. App., 482 N.E.2d 306, we specifically applied the good faith exception of *Leon* and upheld the admissibility of evidence obtained by a search warrant determined to be invalid because of deficiencies in the affidavit.

The affidavit in this case was not so lacking that no reasonably well trained officer could have believed probable cause existed. Thus, this case fits squarely within the *Leon* exception. The evidence obtained under the search warrant was admissible. Therefore, I concur.