**Kenneth KAIL, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 16A01–8708–CR–184.**

Court of Appeals of Indiana, First District.

Sept. 21, 1988.

---

Robert W. Hammerle, Daniel J. Coffey, Indianapolis, for defendant-appellant.

1. Indiana Code section 35–48–4–10(b).

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Kail appeals his conviction of Dealing in Marijuana, a class D felony [1] and Possession of a Schedule I Controlled Substance, a class D felony.[2] We affirm.

## FACTS

On August 29, 1986, an Indiana State Police Trooper, while on air patrol, discovered a marijuana patch in Ripley County. A search warrant was obtained for the property and Kenneth Kail and his wife were arrested for possession and cultivation of marijuana. Thereafter, a search warrant was obtained for the Kails' residence in Decatur County. The following items were recovered in the search of the Kails' residence: over 500 grams of marijuana, scales, baggies, mushrooms containing the drug Psilocyn, approximately $9,000.00 in cash, several books and magazines on how to grow marijuana, and a large number of partially consumed marijuana cigarettes. The search also revealed a seedbed in the attic.

Kail originally was charged on September 2, 1986, with a single count of Dealing in Marijuana, a class D felony. On December 23, 1986, the original information was amended to include two (2) additional counts: Possession of Psilocyn and Possession of Diazepam, both class D felonies. Following trial by jury, Kail was found guilty on Counts I and II, and not guilty on Count III. He was sentenced to a total of eight (8) years, two (2) years suspended, and received a $10,000.00 fine. Kail's motions for an appeal bond were denied. He now appeals his conviction and sentence.

## ISSUES

1. Did the trial court err in denying the defendant's motion for a change of judge?

2. Indiana Code section 35–48–4–7.

2. Did the trial court err in denying the defendant's pre-trial motion to suppress?

3. Were the convictions supported by sufficient evidence?

4. Did the trial court err in sentencing the defendant to four (4) years on each count to run consecutively?

5. Did the trial court err in denying the defendant's petition for an appeal bond?

## DISCUSSION AND DECISION

*Issue One*

■ Kail argues that the trial court erred in overruling his motion for change of judge. He contends first that he was denied a fair hearing because the trial judge testified without taking an oath or being subject to cross-examination. Specifically, he challenges the trial court's statements regarding his rejection of Kail's guilty plea agreement. At trial Kail suggested that the judge take an oath if he intended to testify, however, the judge stated that an oath would not be necessary. Thereafter, Kail's attorney did not object to the judge's statements on the record. Failure to object at trial results in waiver of the issue. *Beland v. State* (1985), Ind., 476 N.E.2d 843, 845. Furthermore, Kail's Motion to Correct Errors does not include the due process challenge to the hearing. Constitutional questions, like other issues, which are not specifically presented in a motion to correct errors are not properly preserved for appellate review. Indiana Rules of Procedure, Trial Rule 59; *Kennedy v. State* (1974), 162 Ind.App. 518, 520, 319 N.E.2d 883, 884. Kail has waived any complaint that he was denied due process because the trial judge was not under oath.

Kail is correct that changes of judge are governed by Indiana Rules of Procedure, C.R. 12 and Indiana Code section 35–36–5–2 which provide in pertinent part:

"The defendant and the state may obtain a change of judge if the judge:

(1) Is biased or prejudiced against the moving party and that the moving party cannot obtain a fair trial before the judge; ...

A motion made under this section must be verified or accompanied by an affidavit specifically stating facts showing that at least one of these causes exists.

The motion must be filed within the time limitations specified in Indiana Rules of Criminal Procedure."

I.C. § 35–36–5–2.

"In criminal actions and proceedings to enforce a statute defining an infraction, a motion for change of judge or change of venue from the county shall be verified or accompanied by an affidavit signed by the Criminal Defendant or the Prosecuting Attorney setting forth facts in support of the statutory basis or bases for the change. Any opposing party shall have the right to file counter-affidavits within ten [10] days, and after a hearing on the motion, the ruling of the court may be reviewed only for abuse of discretion.

"In any criminal action, no change of judge or change of venue from the county shall be granted except within the time herein provided.

"An application for a change of judge or change of venue from the county shall be filed within ten [10] days after a plea of not guilty, or if a date less than ten [10] days from the date of said plea, the case is set for trial, the application shall be filed within five [5] days after setting the case for trial. Provided, that where a cause is remanded for a new trial by the Supreme Court, such application must be filed not later than ten [10] days after the party has knowledge that the cause is ready to be set for trial.

"Provided, however, that if the applicant first obtains knowledge of the cause for change of venue from the judge or from the county after the time above limited, he may file the application, which shall be verified by the party himself specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within ten [10]

days, and after a hearing on the motion, the ruling of the court may be reviewed only for abuse of discretion."

C.R. 12.

■ Clearly, under C.R. 12, a decision concerning a change of judge in a criminal case will be reversed only for an abuse of discretion. *Hicks v. State* (1987), Ind., 510 N.E.2d 676, 678. The record must show actual bias and prejudice against the defendant for such a decision to be reversed. *Thomas v. State* (1985), Ind., 486 N.E.2d 531, 533. As examples of alleged bias, Kail cites the trial court's rejection of his proposed plea agreement and the judge's statement before receiving a pre-sentence report that he intended to impose a jail term if Kail were found guilty. Kail also emphasizes that the trial court denied his petition for an appeal bond and sentenced him to the maximum term allowed by law. In sum, Kail argues that he was denied a fair sentencing hearing. We disagree.

■ We must presume that a judge is unbiased and unprejudiced. In order to overcome this presumption, the moving party must establish that the trial judge has a personal prejudice concerning one of the parties. *Lasley v. State* (1987), Ind., 510 N.E.2d 1340, 1341. The fact that a trial judge ruled against a defendant on several motions and had sentenced him to the maximum term at a prior trial did not constitute prejudice per se. *Id.* at 1342. Bias or prejudice which would warrant reversal exists only where the judge has expressed an opinion on the merits of the case, in other words, on the issue of guilt or innocence. *Wallace v. State* (1986), Ind., 486 N.E.2d 445, 456, *cert. denied* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723. Prejudice must be shown by the conduct of the trial judge and not inferred from the judge's subjective views. *Id.* Also, the rejection of a plea bargain is not sufficient to establish bias or prejudice. *Beland,* 476 N.E.2d at 845. Kail has failed to establish bias or prejudice on the part of the trial judge in this case. Clearly, the denial of a petition for an appeal bond and the rejection of a proposed plea agreement do not denote bias. Furthermore, we do not be-

lieve that the trial judge's comment that he would impose an executed sentence if Kail were found guilty necessarily shows bias. First, the comment does not bear upon the merits of the case, that is, upon Kail's guilt or innocence. In addition, we note that the comments were made in the context of a pre-trial conference discussion of a proposed plea agreement. Finally, Kail did not receive the maximum sentence allowed by law since two (2) years were suspended. The sentence he received was within the statutory limits, and we see no bias or prejudice in the conduct of the trial judge. Kail's motion for a change of judge was properly denied.

*Issue Two*

■ Before addressing the merits of Kail's search and seizure argument, the state contends that Kail waived his objection to the evidence discovered in the search by failing to properly object when the evidence was introduced at trial. Allegations of error in overruling a motion to suppress are not preserved for appellate review unless the record reveals a proper objection when the evidence is offered at trial. *Andrews v. State* (1982), Ind., 441 N.E.2d 194, 198. Likewise, it is incumbent upon the defendant to specify the grounds upon which the objection is premised. *Abner v. State* (1985), Ind., 479 N.E.2d 1254, 1259. In *Abner,* our supreme court held the following objection insufficient to preserve error: the defendant objected "for reasons that we previously argued in chambers." *Id.*

In contrast, Kail's hearing on the motion to suppress was conducted on the day of trial and was included in the record on appeal. The first time the state mentioned the search warrant, Kail's attorney and the judge engaged in the following dialogue:

"MR. COFFEY: Judge, it appears to be a copy. I have no objection to being a copy but at this time I do renew the objection that we have had a few moments ago with respect to the issuance of the warrant and any subsequent search after the issuance of that warrant.

"JUDGE: The objection is noted and overruled.

"MR. COFFEY: Judge, for the record too what I might do rather than repeating it every time I would like to show it as a continuing objection.

"JUDGE: That's fine."

Subsequently when a police officer began testifying as to the items seized in the search of Kail's house, Kail's attorney renewed the objection and the judge again overruled it. Several more times during the trial Kail's attorney objected to the admission of items seized in Kail's home, and each time the objection was overruled. We believe Kail's objections were sufficient to preserve the error for our review, and we therefore proceed to discuss the merits of his search and seizure argument.

■ Kail claims that the facts presented at the probable cause hearing were insufficient to establish probable cause to issue a search warrant for his house. Specifically, he argues that only by speculation could his house have been linked to criminal activity. We do not agree. At the hearing on the application for a search warrant[3] for Kail's residence, Officer Stephen Todd testified that for over twelve (12) years he had been employed by the Indiana State Police and that during that time he had worked as an undercover officer to track down marijuana and other controlled substances. Officer Todd testified further as follows:

"A: [OFFICER TODD] Well on air patrol I discovered a marijuana patch in Ripley County near U.S. 50 six-tenths of a mile west of Michigan Road. As a result of that the Ripley County Circuit Court issued a search warrant and today at 10:00 A.M. this is 8/29 of '86 at 10:00 A.M. a Debra and Kenneth Kail were arrested for possession and cultivating marijuana.

Q: [PROSECUTING ATTORNEY] Were they down there in Ripley County when they were arrested?

A: Yes.

Q: And you have confirmed in your investigation that there was marijuana growing in that patch?

A: Yes sir.

Q: Now you have requested or the State of Indiana is now requesting a search warrant of a premises located in Greensburg, Indiana, Decatur County, at 142 W. Second Street namely a white house located on the northeast corner of Second and Monfort Street and you're requesting that the Court grant a search warrant for marijuana and also other items of [sic] all of which appear to be paraphernalia. Why do you believe there is marijuana and paraphernalia at this residence?

A: Through my training and experience in drug investigations the type of operation that was going on in Ripley County would've required a watering system such as pumps, hoses and so forth, I'd like the receipts and so forth for those items. As typical of a grower they'll many times trim the marijuana leaves and so forth and use them for themselves while they're cultivating the marijuana.

. . . . .

Q: Have you ascertained where they live?

A: Yes at . . . according to registration checks and information by Greensburg Police Department they live at 142 West Second Street.

Q: Now . . .

A: Also as a growing operation they would have needed in their home or some place a seed bed, a grow light to have started the seeds as far back as maybe February or March so they set up so

---

**3.** Indiana Code section 35–33–5–2 provides in pertinent part:

"(a) Except as provided in subsection (c), no warrant for search or arrest shall be issued until there is filed with the judge an affidavit, particularly describing the house or place to be searched and the things to be searched for, ... and that the affiant believes and has good cause

to believe that such things as are to be searched for are there concealed . . .

"(c) In lieu of an affidavit or in addition thereto, a search or arrest warrant may be issued upon sworn testimony of the same facts required for affidavits in a nonadversary, recorded hearing before a judge."

high and then transplant them and transport them down to the location where we've located them. There's ... we're looking for grow lights and so forth like that that [sic] as a result of the investigation."

Supplemental Record at 3–5. A Greensburg police officer also testified that he had observed the Kails' car at their residence and that on the day in question he observed it early in the morning, but later noticed it was gone. He stated that he "notified I.S.P. the vehicle was gone and less than two hours later they were apprehended ... with the same vehicle." Supplemental Record at 5–6.

 Probable cause to issue a search warrant does not require a prima facie showing of criminal conduct, nor does it require a demonstration that contraband will be found on the premises to be searched. *Blalock v. State* (1985), Ind., 483 N.E.2d 439, 444. Rather, probable cause to search requires a sufficient basis of fact to warrant a reasonably prudent person to believe that a search of certain premises will reveal evidence of a crime. *Culver v. State* (1988), Ind.App., 519 N.E. 2d 196, 198. The quantity and nature of information necessary to establish probable cause is inextricably linked to each individual set of facts. *Woods v. State* (1987), Ind.App., 514 N.E.2d 1277, 1279. Our review of a probable cause determination is limited to an examination of the same information that was before the magistrate when the warrant was issued. *Stabenow v. State* (1986), Ind.App., 495 N.E.2d 197, 200.

 We apply a two-step analysis to review a magistrate's determination of probable cause: (1) whether the particular items to be seized are sufficiently connected with criminal activity, and (2) whether the items are to be found in a particular place. If sufficient facts were presented so that a neutral, detached magistrate could respond affirmatively to these questions, we presume that probable cause existed and that the issuance of the search warrant was reasonable. *Stabenow,* 495 N.E.2d at 200, quoting *Layman v. State*

(1980), Ind.App., 407 N.E.2d 259, *trans. denied.* The information upon which probable cause is premised must be attestations of fact and not mere conclusions of the affiant. *Carnes v. State* (1985), Ind.App., 480 N.E.2d 581, 585, *trans. denied.* The probable cause judgment is to be that of the issuing authority and not merely that of the seeker of the warrant. *Layman,* 407 N.E.2d at 264, quoting *Madden v. State* (1975), 263 Ind. 223, 328 N.E.2d 727.

The Oregon courts considered a situation similar to the case at bar in *State v. Anspach* (1984), 68 Or.App. 164, 682 P.2d 786, *rev'd* 298 Or. 375, 692 P.2d 602. In *Anspach,* police officers conducting an aerial search photographed a marijuana patch and a residence in the vicinity of the marijuana plants. The probable cause affidavit set forth the circumstances and results of the aerial search, the location of the property, and the affiant's knowledge and experience in narcotics concerning when marijuana is harvested and what related items are likely to be found in residences and outbuildings on the property of those who grow marijuana. The court of appeals explained that a probable cause affidavit must fulfill two requirements. First, it must set forth objective observations that would permit a disinterested magistrate to conclude that there is probable cause to believe that the persons residing on the premises have some relationship to the plants. *Anspach,* 682 P.2d 786, 791. Second, to justify a search of the residence and other buildings, the affidavit must contain additional facts to support probable cause to believe that marijuana, cultivating implements, or paraphernalia are probably in the building to be searched. *Id.*

The appellate court held that the affidavit failed to satisfy the first prong of the test because no facts alleged therein supported a belief that the defendants knew the marijuana plants were growing on the premises or that they had cultivated them. In a dissenting opinion, Judge Richardson stated that the affidavit satisfied the first prong because where marijuana is growing in proximity to an isolated rural residence, "it does not defy common sense to conclude

that there is a probability that the plants and residents are connected." *Id.* at 793. Furthermore, Judge Richardson noted that as to the second prong, the experiences of the affiant as to how marijuana farming is carried on *is a fact* and supports an inference that in a particular instance there is a probability that the residents follow the common practice. *Id.* at 793–94 (emphasis added). The Supreme Court of Oregon subsequently reversed the appellate decision and held that the facts alleged in the affidavit satisfied both prongs of the probable cause test. The supreme court explained:

> "We only disagree with the Court of Appeals that the facts and circumstances in this case failed to give rise to probable cause to make the first necessary connection. This is not a case where the crop and the residence are located on separately owned or publicly owned properties, or where other means of access to the crop likely are located nearby. Such circumstances would diffuse the likelihood that one particular residence would be connected to the contraband and would necessitate a stronger factual showing why one residence should become the target of a search. In such a case we well might demand the type of factual showing suggested here by the Court of Appeals, that is, an observable path between the plants and the premises, or a showing that the crop is located in close proximity to the residence."

*Anspach,* 692 P.2d 602, 605.

The facts of the case at bar differ slightly in that the marijuana plants were not growing on the same property where the residence was located. However, there is no doubt that Kail knew of the existence of the marijuana patch and that he and his wife used their car to travel between the patch and their residence. Thus, the facts of our case clearly would satisfy the first prong of Oregon's probable cause test; the persons residing in the house have some relationship to the plants. Furthermore, the second prong of Oregon's test would be satisfied by Officer Todd's statements that, based on his experience, marijuana growers commonly store cultivating equipment

and trimmed leaves in their homes. Clearly, at least Judge Richardson would regard such an experience-based statement by an affiant as a fact from which the magistrate could infer that this particular defendant followed the common practice.

We turn now to Indiana's probable cause requirements as set forth in *Layman* and *Stabenow.* In *Stabenow,* police officers assigned to a drug interdiction detail detained the defendant at the Indianapolis Airport after he returned from a flight to Florida. The officers searched his carry-on luggage and found valium tablets for which Stabenow had no prescription. Stabenow's car was towed from the airport to a police garage, and police officers prepared the following affidavit seeking a search warrant for the car:

> "Frederick A. Warren, Police Officer swears or affirms that he believes and has good cause to believe that on November 27, 1984, a Mr. Joel L. Stabenow W/M was arrested at INternational [sic] Airport for two (2) counts of Violations of the INdiana [sic] Controlled Substance Act. Mr. Stabenow W/M has been under investigation by this officer for approximately one (1) month. At the time of Mr. Stabenow's arrest he was advised of his Miranda Rights and Mr. Stabenow stated he did not have a vehicle. Mr. Stabenow was observed leaving the airport on several occasions in a 1972 Green Chevrolet, bearing Indiana plate 48 E 9812 prior to November 27, 1984. Said plate is register [sic] to Joel L. Stabenow, R.R. # 2, Elwood, Indiana.
>
> I am requesting to search Mr. Stabenow's vehicle for anyevidence [sic] of a conspiracy to violate the Indiana Controlled Substance Act."

*Stabenow,* 495 N.E.2d at 199. A subsequent search of the car's trunk revealed cocaine, and Stabenow's motion to suppress the cocaine was denied. On appeal we held that the affidavit was insufficient to establish probable cause because the facts alleged therein did not "create either a connection between the automobile and any criminal activity or a possibility that evidence of a conspiracy to violate the con-

trolled substance laws would be found in the automobile." *Id.* at 200. We noted also that although Stabenow had been seen leaving the airport in his car *on earlier occasions*, the affidavit did not reveal the location of his car on the day in question. Furthermore, the affidavit did not reveal whether Stabenow used the car in connection with criminal activity, nor did it state whether Stabenow had had any contact with his car on the date of his arrest. We concluded that "the mere driving of a car on previous occasions, without more, does not create any reasonable inference that the automobile was connected with criminal activity or that any evidence of criminal activity would be found in the automobile." *Id.* at 201.

The probable cause hearing for the application for a search warrant for Kail's residence reveals considerably more information than did the *Stabenow* affidavit. Officer Todd described the air patrol discovery of the marijuana patch in Ripley County and explained that the Kails had been arrested "down there in Ripley County" for possession and cultivating marijuana. Supplemental Record at 3. It certainly is reasonable to infer from this testimony that Kail was arrested at the marijuana patch. Furthermore, a local police officer testified to the location of the Kails' residence and stated that he had observed their car at their residence on the morning of the arrest and that later the same morning the Kails were arrested in Ripley County with the same car. We deem this conduct sufficient to connect the Kails' automobile and residence with the criminal activity in Ripley County. Certainly the facts alleged at the hearing were sufficient for the judge to draw a reasonable inference of such a connection.

However, a connection between the Kails' residence and the marijuana patch, without more, would not justify a search warrant. Indiana's probable cause test requires that the particular items to be seized are sufficiently connected with criminal activity and that the items will probably be found in a particular place. The search warrant in question specified marijuana and various items of paraphernalia. Officer Todd testified that, based on his training and experience in drug investigations, "the type of operation that was going on in Ripley County would've required a watering system such as pumps, hoses ... [a]lso as a growing operation they would have needed in their home or some place a seed bed, a grow light ..." Supplemental Record at 4–5. We believe the judge was entitled to consider the affiant's experience, training, and statements made based on that experience in assessing probable cause. The facts alleged in the probable cause hearing support a reasonable inference that the items to be seized were connected with criminal activity and probably were located in Kail's house.

Even if the facts alleged in the probable cause hearing were insufficient, no cause for reversal would exist. Evidence obtained in violation of the Fourth Amendment by officers acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded. *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677; *Blalock v. State* (1985), Ind., 483 N.E.2d 439. *Leon* created a good-faith exception to the exclusionary rule which, under certain circumstances, allows the use of evidence seized in good-faith reliance on a search warrant which is ultimately found to be unsupported by probable cause. As applicable in the case at bar, the *Leon* rule provides that exclusion of the evidence would be appropriate only where the warrant is so facially deficient that it could not be reasonably relied upon by the executing officers, or where the affidavit on which the warrant is based is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. This case fits squarely within the *Leon* exception. The information presented at the probable cause hearing was not so lacking in indicia of probable cause as to render the judge's belief in its existence unreasonable, nor was the warrant so facially deficient that it could not reasonably be relied upon.

The evidence obtained under the search warrant was admissible.

*Issue Three*

Kail next argues that his convictions were not supported by sufficient evidence. Challenges to the sufficiency of evidence are governed by a well settled standard of review. We do not reweigh evidence or judge the credibility of witnesses; instead, we consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. *Baskin v. State* (1986), Ind., 497 N.E.2d 204, 205; *Corder v. State* (1984), Ind., 467 N.E.2d 409, 412. When there is substantial evidence of probative value to support the conviction, the finding of the trier of fact will not be disturbed. *Baskin*, 497 N.E.2d at 205.

▮▮▮▮ Kail first claims that the evidence was insufficient to support the conviction of Dealing in Marijuana because no evidence of probative value was presented that Kail possessed the marijuana with the intent to deliver. Kail is correct that his conviction under Ind.Code § 35–48–4–10 required proof of possession "with intent to manufacture or deliver, marijuana", however we do not agree that the evidence failed to support that element of the offense. Our supreme court has held that illegal possession of a large quantity of drugs is sufficient to sustain a conviction based on possession with intent to deliver. *Montego v. State* (1987), Ind., 517 N.E.2d 74, 76; *Young v. State* (1985), Ind., 478 N.E.2d 50, 51. A quantity permitting an inference of predisposition to sell is one which could not be personally consumed or used and therefore of necessity available for delivery or sale. *Montego*, 517 N.E.2d at 76; *Voirol v. State* (1980), Ind.App., 412 N.E.2d 861, 864, *trans. denied.* Furthermore, because intent is a mental state, the trier of fact must usually resort to reasonable inferences based on examination of surrounding circumstances to determine whether the requisite intent exists. *Mon-*

*tego*, 517 N.E.2d at 75. Circumstantial evidence of intent to deliver such as scales, plastic bags, and other paraphernalia is sufficient to support a conviction. *Id.* at 76.

▮▮▮ The record in this case reveals that over 509 grams of marijuana and over $9,000.00 in cash were seized in Kail's bedroom. The search of Kail's house also revealed plastic bags, scales, seeds, a roach clip, rolling papers, lighters, scissors, literature dealing with growing marijuana, a large number of "roaches" and a greenhouse-type operation in the attic.[4] An Indiana State Police chemist testified that if 500 grams of marijuana were made into average-sized marijuana cigarettes, approximately 1666 marijuana cigarettes would be produced. We believe this evidence, taken together, adequately supports the jury's conclusion that Kail possessed marijuana with the requisite intent to deliver. The jury was not required to believe Kail's theory that the presence of marijuana in his residence was "completely consistent with massive personal use." Appellant's Brief at 24.

▮▮▮ Next, Kail challenges the sufficiency of the evidence regarding possession of Psilocyn. Kail admits possessing mushrooms, but claims that the State failed to establish that he knowingly possessed Psilocyn, a controlled substance naturally occurring in the mushrooms he possessed. Kail is correct that his conviction of Ind. Code § 35–48–4–7 required proof that he "knowingly or intentionally" possessed a controlled substance. Because "knowing" possession of a drug concerns the defendant's mental state, the trier of fact is entitled to make reasonable inferences based upon examination of the surrounding circumstances. *See Montego*, 517 N.E.2d at 75. A review of the record discloses that Kail does not dispute his possession of the mushrooms which contained Psilocyn. The mushrooms were found in an overnight case in the same master bedroom where a large amount of marijuana was discovered.

4. "Roach" is a slang term for the butt of a marijuana cigarette. The American Heritage Dictionary (1981).

The overnight case contained a bag of mushrooms, a glass jar containing $1,000.00, a metal case containing $1,901.15, and a coffee can containing $6,050.00. Furthermore, a police chemist testified that the mushrooms discovered in Kail's bedroom did not grow naturally in Indiana, but that they grew in the southwestern United States, Mexico, and various parts of Central and South America. The chemist testified also that the mushrooms could be grown artifically, and Officer Todd stated that in the course of other drug investigations he had purchased psilocyn mushrooms in Indiana. Todd testified also that using the mushrooms involves simply eating them. From this evidence the jury could reasonably infer that Kail knew the character of the mushrooms at the time he possessed them. The evidence was sufficient to support Kail's conviction of Possession of a Schedule I Controlled Substance.

*Issue Four*

Kail next argues that the trial court erred in sentencing him to four (4) years on each class D felony conviction to run consecutively. In reviewing sentences we will not revise a sentence authorized by statute except where the sentence is manifestly unreasonable in light of the nature of the offense and character of the offendter. *Powers v. State* (1983), Ind., 440 N.E. 2d 1096, 1106, *cert. denied* 461 U.S. 906, 103 S.Ct. 1876, 76 L.Ed.2d 808. A sentence is not manifestly unreasonable if any reasonable person could find it to be appropriate. *Haskett v. State* (1984), Ind.App., 467 N.E.2d 32, 36, *trans. denied.* Furthermore, it is within the trial court's discretion whether to impose the presumptive sentence or an enhanced or mitigated sentence. *Id.* Indiana Code section 35–50–2–7 provides that a person who commits a Class D felony shall be imprisoned for a fixed term of two (2) years with not more than two (2) years added for aggravating circumstances or not more than one (1) year subtracted for mitigating circumstances. Also, the defendant may be fined not more than $10,000.00. When the sentencing judge departs from the fixed term, the judge must set forth a statement of reasons supporting any aggravating or mitigating circumstances. *Wilson v. State* (1984), Ind., 458 N.E.2d 654, 655. The same aggravating criteria may justify an enhanced sentence as well as a determination that the sentences run consecutively. *Haskett,* 467 N.E.2d at 36. On appellate review we examine the formal sentencing, and we consider also the trial court's statements at the time the sentence was pronounced in open court. *Wilson,* 458 N.E. 2d at 655.

At Kail's sentencing hearing the trial court heard arguments on behalf of the State and the defendant regarding mitigating and aggravating factors. The judge stated that as mitigating circumstances he considered the fact that Kail has a wife and child who would suffer hardship as a result of his imprisonment and that approximately twelve (12) years had elapsed since his prior conviction of possession of marijuana. As aggravating circumstances the court considered the fact that Kail's prior conviction had been on similar charges, that the quantities involved here were well in excess of the amount necessary to convict the defendant of the crimes charged, that the judge was unconvinced that Kail had changed his ways, and that a lesser sentence would send a message to the community that illegal drug dealing was "no big deal". Record at 508. The court then sentenced Kail to four (4) years on each count (two (2) years presumptive plus two (2) additional years on each count for aggravating circumstances) but suspended two (2) years for a total executed sentence of six (6) years.

Kail first argues that the trial court failed to find mitigating circumstances which were made a part of the record. We see no error in the court's treatment of mitigating circumstances. While a trial judge may not ignore facts in the record which would mitigate the offense, *Dockery v. State* (1987), Ind.App., 504 N.E.2d 291, 297, the judge need not explain why allegedly mitigating circumstances, argued by defense counsel, were not used by the court to mitigate the sentence. *Hammons*

*v. State* (1986), Ind., 493 N.E.2d 1250, 1254, *reh. denied* 496 N.E.2d 1284. In *Hammons*, where mitigating factors were offered to offset aggravating factors rather than to reduce a presumptive term, the only uncontroverted mitigating factor presented was the defendant's employment record. The court's conclusion that mitigating circumstances were outweighed by aggravating circumstances indicated that the court did not deem the employment record to be a significant factor. Our supreme court held that the court was not obligated to identify or balance all the mitigating factors argued by the defendant. *Id.* at 1255. Likewise, in the case at bar, the sentencing judge was not required to believe that Kail was remorseful or find that he would respond affirmatively to probation. Nor was the judge required to consider as mitigating factors the statements of Kail's father that Kail had lived in the county for six (6) or seven (7) years and had held a job for four (4) years. The trial court did not err in identifying mitigating factors.

 Kail argues also that the trial court considered improper factors as aggravating circumstances. Again, we disagree. It is proper for a trial court to consider the defendant's prior criminal activity at the sentencing hearing. *Floyd v. State* (1987), Ind., 503 N.E.2d 390, 394. Such criminal activity need not be reduced to a conviction to be properly considered by a court in fixing punishment. *Id.* Thus, the trial court properly considered the impact of Kail's prior conviction on a marijuana charge. Furthermore, the court properly considered whether a lesser sentence would depreciate the seriousness of the offense. These aggravating factors supported both the enhancement of the sentences and the determination that the sentences would run consecutively. We find no abuse of discretion in the sentence enhancement, nor do we find the sentence manifestly unreasonable in light of the nature of the offense and character of the offender.

*Issue Five*

Finally, Kail argues that the trial court abused its discretion in denying Kail an appeal bond. We note, however, that this court denied Kail's petition for an appeal bond on August 19, 1987. Moreover, the denial of a petition for an appeal bond may not be argued in the appeal on the merits of the case. *Naked City, Inc. v. State* (1982), Ind.App., 434 N.E.2d 576, 579, fn. 1. We therefore do not address Kail's contention that the trial court's denial of an appeal bond constituted an abuse of discretion.

The decision of the trial court is affirmed.

NEAL and STATON, JJ., concur.