**Johnny EDWARDS, III, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–9609–CR–316.

Court of Appeals of Indiana.

June 4, 1997.

Charles E. Stewart, Jr., Appellate Public Defender, Crown Point, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

### OPINION

GARRARD, Judge.

Johnny Edwards, III ("Edwards") appeals his convictions for dealing in cocaine, a Class A felony, theft, a Class D felony, possession of marijuana, a Class D felony, and possession of marijuana, a Class A misdemeanor. He alleges that the trial court erred when it overruled his motion to suppress evidence seized from his residence because the affidavit offered in support of the search warrant failed to establish probable cause.[1] We affirm.

### FACTS AND PROCEDURAL HISTORY

In January 1995, police began receiving anonymous calls from individuals who indicated that they observed what they believed to be narcotic transactions at Edwards' residence. In relating the same scenario, the callers stated that numerous individuals came to Edwards' residence, shook the chain link fence, waited, and subsequently, a black male exited the home, walked to the fence, and gave a "bag" to the individual at the fence in exchange for money. In early April, police arrested an individual in the immediate area of Edwards' home who was in possession of controlled substances. After telling police that he had information that the narcotics unit would be interested in, he indicated that a 6'5" black male referred to as "Jab" was dealing marijuana from Edwards' residence. Police officers knew Edwards had the street name "Jab." The individual (hereinafter "CI") indicated that he had observed Edwards trafficking narcotics from his home.

Subsequently, police began conducting surveillance on Edwards' residence and observed countless individuals stopping at Edwards' residence, staying for only a minute and then leaving. Officers with years of narcotics experience observed what they believed to be hand to hand narcotic transactions. Additionally, police surveillance disclosed that two large dogs were now on Edwards' property and that large mirrors had been installed outside of the home.

Officer Bales, an 18 year member of the police department who served as an undercover investigator on the drug task force for more than four (4) years, was assigned to investigate controlled substance sales at Edwards' residence. On August 7, 1995, Bales submitted an affidavit for a search warrant based on and including the above information. He indicated in the affidavit that all of the information contained therein was the result of personal investigative observations or observations and conversations with other law enforcement officers, or by reports of investigations prepared by specific law enforcement officers. He stated that "[f]or the past several weeks we officers have conducted surveillance on this residence because of

---

1. Because we find that the affidavit was sufficient to support the magistrate's finding of probable cause to issue the search warrant, we need not address the issue of whether the good faith exception was applicable.

numerous telephone calls from the neighbors, and due to the above information." Without more specifics, Bales indicated that officers verified a majority of the CI's statement. He also concluded that the dogs were for protecting Edwards' property and that the mirrors were for observation of individuals approaching his home and to observe alley traffic. The Honorable Judge Gonzalez of the Hammond City Court authorized the search of Edwards' residence based on Bales' affidavit. Subsequently, on the same day, police executed the search warrant. As a result of the search, Edwards was charged with dealing in cocaine, theft and two counts of possession of marijuana.

On March 12, 1996, Edwards filed a motion to suppress and a memorandum in support thereof. The trial court denied his motion to suppress and the matter proceeded to trial in April 1996. The jury found Edwards guilty of dealing in cocaine, a class A felony, two counts of possession of marijuana, one as a class D felony and one as a class A misdemeanor, and theft. The trial court sentenced Edwards on May 3, 1996, and Edwards filed this timely appeal. Additional facts will be supplied as needed.

### DISCUSSION AND DECISION

■ We initially address the State's contention that Edwards waived any error stemming from the issuance of the search warrant because he failed to properly object at trial. "Allegations of error in overruling a motion to suppress are not preserved for appellate review unless the record reveals a proper objection when the evidence is offered at trial." *Kail v. State*, 528 N.E.2d 799, 804 (Ind.Ct.App.1988), *trans. denied*. The defendant must specify the grounds upon which the objection is premised. *Id.*

The State maintains that although Edwards objected at trial, his initial objection and continuing objections were insufficient to preserve the issue for appellate review. In *Abner v. State*, 479 N.E.2d 1254 (Ind.1985), our supreme court held as insufficient defendant's objection "for reasons that we previously argued in chambers." *Id.* at 1259. However, in *Smith v. State*, 565 N.E.2d 1059 (Ind.1991), the court found that the defen-

dant's objection " 'based on the search and seizure grounds previously raised,' " was sufficient to preserve the issue for review. *Id.* at 1061 (quoting Record at 2807). In *Smith*, the trial court denied the defendant's motion to suppress after recessing the trial to conduct a hearing on the motion. In rejecting the State's claim of waiver, the court noted that the defendant referred to a prior objection expressly made on the record in open court and indicated:

> The record must demonstrate that the continuing objection or reference to a prior objection fully and clearly advises the trial court of the specific grounds for the objection. Ind.Trial Rule 46. In the present case, we find that the actions of defense counsel were sufficient to fully apprise the trial court of the specific basis for his petition, thus permitting effective appellate review of the trial court's rulings.

*Id.* at 1061.

In addressing the merits of the trial court's denial of the defendant's suppression motion in *Kail*, 528 N.E.2d 799, we distinguished the defendant's objection from that in *Abner, supra*. "In contrast, Kail's hearing on the motion to suppress was conducted on the day of trial and was included in the record on appeal. . . ." *Id.* at 804. The defendant initially objected to the issuance of the warrant and subsequent search, and his continued objections to the admission of seized items were overruled. We concluded that "Kail's objections were sufficient to preserve the error" for review. *Id.* at 805.

The State cites *Serano v. State*, 555 N.E.2d 487 (Ind.Ct.App.1990), *trans. denied*, noting that the continuing objection " 'for reasons that we have previously stated in our motion' [was] sufficient to preserve error when 'the hearings on Serano's various motions are included in the record.' " Appellee Brief, p. 7 (quoting *Serano*, 555 N.E.2d at 495, n. 5). Of additional importance in *Serano*, we indicated that "our review of the record indicates that the trial court understood the grounds upon which [the defendant] was objecting." *Serano*, 555 N.E.2d at 495, n. 5.

Our supreme court enunciated the importance of the trial court's understanding in *Harvey v. State*, 546 N.E.2d 844 (Ind.1989). In *Harvey*, the court found that the defendant waived consideration of error by failing to present a record demonstrating the specific objection. The court noted that "[t]he record does not disclose the content of any discussion in chambers or of the alleged motion in limine. Nor does it reflect the specific basis of his motion or subsequent objection." *Id.* at 846. The court quoted 3 W. HARVEY, INDIANA PRACTICE, Rule 46, at 270–71 (2d ed.1988) in support of the principal reasons for stating the proper basis for an objection.

> It may well protect the trial court from committing error and will furnish a proper basis to correct the trial court on review when it has committed error. It should prevent the entrapment of the trial court by a general objection when there is a specific and valid ground therefor, which, though not considered, the objecting party subsequently may wish to urge on appeal. [citations omitted].

*Id.* at 846.

■ Although Edwards failed to provide a transcript of the suppression hearing, we find this case more analogous to *Serano, supra.* When the State moved to admit evidence resulting from the search, a picture of seized marijuana, the following exchange took place between the trial court and Edwards' counsel.

BY MR. ENGELLAND:

> I'm going to object to the admission of the evidence at this point, pursuant to previous matter that have been brought up concerning—

BY THE COURT:

> Do you want to have a continuing objection based on that pre-trial hearing?

BY MS. TAVITAS:

Yes, your Honor.

Record at 155–56. When additional evidence resulting from the search was offered, Edwards objected based on his continuing objection. Record at 198, 208, 237, 253, 284, 356, 369. Responding to one such objection, the trial court stated, "I gave that to you earlier. I said that would be a continuing objection based on the previous hearing we held." Record at 198.

According to the trial court's minutes, the only pre-trial hearing based on a motion by Edwards, aside from the hearing on his motion to suppress, was on a motion for bail reduction which the trial court granted.[2] It appears from the transcript that the trial court anticipated and curtailed Edwards' objection regarding the denial of his suppression motion. The trial court offered to make Edwards' objection a continuing objection based on "that pre-trial motion." It is clear from the record that Edwards objected in a timely fashion. Although we acknowledge that Edwards was under a duty to present an adequate basis for his objection, our review of the record, similar to *Serano, supra,* indicates that the trial court understood that the grounds for Edwards' objection were those proffered in his motion to suppress and accompanying memorandum.

Although Edwards did not include a transcript of the suppression hearing, he did provide a copy of his motion and supporting memorandum on which the trial court based its denial. Edwards' arguments on appeal substantially mirror his arguments to the trial court. Based on the circumstances of this case,[3] we find that Edwards' objections were sufficient to preserve the error for review. Therefore, we turn to the merits of his search and seizure argument.

Edwards contends that the search warrant was not supported by probable cause. Our opinion in *Kail v. State*, 528 N.E.2d 799

---

**2.** On March 12, 1996, the defendant filed, in addition to the motion to suppress, a motion to compel which was granted on March 21, 1996, the same day the motion to suppress was denied. Record at 3.

**3.** This is not to say that the failure to provide a transcript of a suppression hearing cannot ren-

der a defendant's objection at trial insufficient to preserve the matter for review. Based on the circumstances of the case at bar, we find that the trial court was apprised of the grounds for Edwards' objection and that this court can sufficiently address the merits of Edwards' arguments.

(Ind.Ct.App.1988), *trans. denied,* lends guidance for such a claim.

> Probable cause to issue a search warrant does not require a prima facie showing of criminal conduct, nor does it require a demonstration that contraband will be found on the premises to be searched. Rather, probable cause to search requires a sufficient basis of fact to warrant a reasonably prudent person to believe that a search of certain premises will reveal evidence of a crime. The quantity and nature of information necessary to establish probable cause is inextricably linked to each individual set of facts. Our review of a probable cause determination is limited to an examination of the same information that was before the magistrate when the warrant was issued.

> We apply a two-step analysis to review a magistrate's determination of probable cause: (1) whether the particular items to be seized are sufficiently connected with criminal activity, and (2) whether the items are to be found in a particular place. If sufficient facts were presented so that a neutral, detached magistrate could respond affirmatively to these questions, we presume that probable cause existed and that the issuance of the search warrant was reasonable. The information upon which probable cause is premised must be attestations of fact and not mere conclusions of the affiant. The probable cause judgment is to be that of the issuing authority and not merely that of the seeker of the warrant.

*Id.* at 806 (citations omitted). Additionally, the requirements of a warrant are codified at Indiana Code § 35–33–5–2, which states, in part:

> (a) Except as provided in section 8 of this chapter, no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:
>
> (1) particularly describing:

> (A) the house or place to be searched and the things to be searched for; or
>
> (B) particularly describing the person to be arrested;
>
> (2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:
>
> (A) the things as are to be searched for are there concealed; or
>
> (B) the person to be arrested committed the offense; and
>
> (3) setting forth the facts then in knowledge of the affiant or information based on hearsay constituting the probable cause.
>
> (b) When based on hearsay, the affidavit must either:
>
> (1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or
>
> (2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

Edwards maintains that the trial court, in denying his motion, failed to properly apply the provisions of Ind.Code § 35–33–5–2(b). He asserts that the affidavit did not establish the credibility of the hearsay source and that the information provided by the confidential informant was stale and lacked a factual basis.[4]

Although the CI was arrested in possession of a controlled substance in the immediate area of Edwards' home, provided a physical description and street name for Edwards and indicated that he personally observed Edwards trafficking narcotics from his home, this does not establish the CI's credibility. Bales' statement that the CI was truthful and credible was based on the fact that police verified a majority of his statement. His statement, however, provided no detail as to what specific information was verified. Although this alone may be tenu-

---

**4.** Edwards contends throughout his argument that Bales did not make clear in the affidavit whether Bales, the affiant, received the phone calls and participated in the surveillance. However, "[w]here participating officers seeking a search warrant collectively have probable cause, their individual knowledge can be imputed to the officer seeking the warrant." *Cutter v. State,* 646 N.E.2d 704, 713 (Ind.Ct.App.1995), *trans. denied.*

ous grounds for establishing the CI's credibility, the affidavit contained additional information and was not totally reliant on CI's statements.

Police officers with years of narcotics experience conducted surveillance on Edwards' residence and observed what they believed to be hand to hand narcotic transactions. Additionally, they observed a high volume of individuals and vehicles stopping at Edwards' residence "only to stay for a minute and then depart." Record at 52. As we indicated in *Culver v. State*, 519 N.E.2d 196 (Ind.Ct.App. 1988), *reh'g denied.*

> Officer Lawson stated that he observed what appeared to be drug trafficking from the sight of a high volume of persons entering the dwelling and leaving after a brief period of time. This activity might appear to be innocent to some. But, when seen through the eyes of those who are trained in enforcing the law, certain conduct and activities take on significance that the unexperienced person might overlook.... Officer Lawson's deduction Culver was selling drugs from his apartment could be made from the tip which he then corroborated by observing activity at Culver's dwelling which indicated to him drug activity. [footnote omitted]

*Id.* at 200. The experienced officers' observations would corroborate not only the CI's personal observations of Edwards' drug trafficking, but also the anonymous calls from individuals which related the same scenario, that numerous individuals were coming to Edwards' home day and night and exchanging money through the fence for a bag of unknown contents. Bales also indicated that Edwards had purchased two large dogs and installed mirrors on each side of the house. Although Bales' statements that the dogs were for protection and that the mirrors were installed to monitor individuals and alley traffic were conclusory, this does not prevent the issuing magistrate from reasonably inferring the same from the facts provided. "The decision to issue the warrant should be based on the facts stated in the affidavit and the rational and reasonable inferences drawn therefrom." *Utley v. State,* 589 N.E.2d 232, 236 (Ind.1992), *cert. denied*

506 U.S. 1058, 113 S.Ct. 991, 122 L.Ed.2d 142 (1993).

We find our examination of the evidence, when viewed as a whole, similar to our examination of the evidence in *Culver, supra.*

> In this case we have only bits and pieces of evidence tending to show probable cause, with no one bit or piece being conclusive. This was also true in *Gates* and in *Upton, supra,* a case in which the Court further construed *Gates.* As the Court pointed out in those instances, it was not a single piece of information that proved decisive, but the way in which the pieces fitted together that made for a showing of probable cause.... As the court stated in *Upton, supra:*
>
>> "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.,* 466 U.S. at 734, 104 S.Ct. at 2089 (quoting *United States v. Ventresca* (1965), 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684).

*Id.* at 201.

The affidavit contained information which we believe established that the totality of the circumstances corroborated the hearsay. "Sufficiency need not rest on a single piece of information, but rather in the way the pieces fit together." *Utley,* 589 N.E.2d at 236. Similar to *Culver, supra,* there were bits and pieces of evidence tending to show probable cause. The quantity and nature of information necessary to establish probable cause is inextricably linked to each individual set of facts. *Kail,* 528 N.E.2d at 806. Although one particular piece of evidence may not have conclusively established probable cause, we find that the evidence in the affidavit, when fitted together and viewed collectively, was sufficient to support the magistrate's finding of probable cause.

 Edwards also contends that the information contained in the affidavit was at least four months old and therefore "constitutionally stale." We do not agree. Edwards incorrectly states that the only information

submitted in support of the search warrant was obtained between January 1995 and April 1995. This contention ignores the police surveillance of Edwards' residence in the weeks preceding the search warrant. The police began to receive phone calls regarding drug trafficking in January of 1995. In April of 1995, the CI was arrested and subsequently provided police with information regarding Edwards' drug trafficking activities. Based on this information of Edwards' ongoing drug related activities, police began surveillance of his residence. The affidavit indicated that "[f]or the past several weeks," officers had conducted surveillance of his residence and observed what they believed, based on their years of experience in narcotics, to be hand to hand narcotic transactions.

The issuing magistrate could have reasonably inferred that Bales' statement, "the past several weeks," was an indication that police had conducted surveillance in the weeks prior to requesting the warrant, including and up to the point that Bales requested the search warrant. *Utley*, 589 N.E.2d at 236. Bales provided information from which the issuing magistrate could have concluded that Edwards was involved in ongoing illegal drug activities over a period of months, including the time period immediately preceding the request of the warrant. Accordingly, we do not find the information "constitutionally stale."

Accordingly, we affirm.

HOFFMAN and NAJAM, JJ., concur.