Kimberly D. WOOD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee.

No. 48A02–9104–CR–180.

Court of Appeals of Indiana,
Second District.

June 3, 1992.

Steven C. Smith, P.C., Anderson, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Kimberly Wood appeals her conviction of Possession of Marijuana, a Class D felony.[1] Upon appeal, Wood argues that the trial court erroneously admitted evidence, some of which was obtained as a result of an illegal, warrantless search, and some of which was obtained pursuant to a search warrant issued upon the strength of recklessly false statements as to the reliability of an informant.

We affirm.

The evidence most favorable to the judgment shows that on August 11, 1990, while police officer Derek Hobbs was investigating a battery upon Terry Zachery, he learned from a confidential informant that marijuana was growing at the house of Wood, whom Zachery had identified as her attacker in the battery incident. Officer Hobbs went to Wood's house and knocked on the front door. When no one responded, he walked to the rear of the house to determine whether anyone was home, and to ascertain whether Woods might be attempting to leave. While walking around the house, Officer Hobbs saw, "in plain view," a large quantity of marijuana growing in the yard by the south side of the house.

Officer Hobbs contacted narcotics Detective Terry Sollars and advised him of the marijuana growing in Wood's yard. A search warrant was obtained and a subsequent search of the house revealed marijuana growing in the house, "cut" marijuana, marijuana seeds, scales, and equipment used to grow plants indoors. A warrant was then issued for Wood's arrest, charging her with, *inter alia,* possession of mari-

juana. Wood was convicted following a jury trial, from which she brings the instant appeal.

Before trial, Wood submitted a Motion to Suppress Evidence, claiming that the discovery of the marijuana outside of the house occurred while Officer Hobbs was illegally upon her property without a search warrant. She also claimed that the subsequent search warrant, which was issued pursuant to Detective Sollars's representations, was invalid because the informant's credibility was represented with reckless disregard for the representation's accuracy.

■ Wood's argument is addressed to error asserted in the denial of her Motion to Suppress Evidence. The denial of a motion to suppress evidence does not constitute error. Rather, error is preserved only when the record reveals a proper objection when the evidence is introduced at trial. *Kail v. State* (1988) 1st Dist. Ind. App., 528 N.E.2d 799, 804, *trans. denied.* However, the State and Wood entered an Agreed Stipulation of record upon appeal which was approved by the trial court. It states: "During trial, the defendant did make a timely objection to the introduction of the evidence offered during the trial." Record at 2. Notwithstanding the inartful way in which the appellant frames the question, we will address the appeal upon its merits.

### I. *Discovery of Growing Marijuana*

■ Wood claims that Officer Hobbs was on her property illegally when he discovered the marijuana plants growing outside. Thus, she argues, the discovery resulted from an illegal search and any fruits of that search are inadmissible.

Although Officer Hobbs went, in part, with knowledge of a report of marijuana at Wood's house, it appears that the primary purpose was to investigate the battery upon Zachery.

"[Court]. Are you telling ... me that in addition to [the battery investigation] that someone had mentioned to you or

---

1. I.C. 35–48–4–11 (Burns Code Ed.1985).

had informed you that you might discover that there was marijuana at that household?

[Hobbs]. That is correct.

[Court]. So you were, you were alert to that, but the original function prior to that of going to the house was because sometime earlier that evening or a previous day or when (?) there had been some battery alleged?

[Hobbs]. Right."

Record at 123–24.

Thus, as he approached and knocked on Wood's front door, Officer Hobbs's presence on Wood's property was largely attributable to a routine battery investigation.

His status did not change when he rounded the house to ascertain that no one was at the rear of the house or leaving the premises. His presence was still attributable to the battery inquiry. It was while walking around the house pursuant to the battery investigation that Officer Hobbs saw the marijuana plants growing in "plain view" in the side yard.[2]

■ The phrase "plain view" is often used when "open view" may be a more appropriate term with regard to admissibility of evidence. "Plain view" is used when an item is inadvertently discovered during a valid search for something else, while "open view" describes a discovery when the officer is not conducting a search, but is in a place where he is lawfully entitled to be. *See* 16 Indiana Practice, Criminal Procedure § 2.2(e) (1991). Furthermore, the term "open view" is not identical with the principle described as the "open fields" doctrine. *See* 1 LaFave, Search and Seizure § 2.4(a) (2d ed. 1987).

The standard for meeting the "plain view" test has traditionally required not only that the officer is in a place where he is entitled to be, but also that the discovery is inadvertent. *Coolidge v. New Hampshire* (1971) 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. However, the inadvertence facet of the test appears to have been abrogated, at least insofar as United States Constitution Fourth Amendment considerations are involved. *Horton v. California* (1990) 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112; 1 Hall, Search and Seizure § 9.5 (2d ed. 1991). The inadvertence requirement may still have application with respect to state constitutional provisions, such as Art. 1, § 11 of our Indiana Constitution.

Whether Officer Hobbs's discovery of the growing marijuana is labelled "open view," as in *Sayre v. State* (1984) 3d Dist. Ind.App., 471 N.E.2d 708, *trans. denied*, or "plain view," as in *May v. State* (1977) 3d Dist., 173 Ind.App. 482, 364 N.E.2d 172, and whether we require the discovery to have been inadvertent, is not dispositive.

So long as the investigation of the battery complaint against Wood was legitimate and not merely a subterfuge, the existence of a tip that marijuana might be found on the premises does not destroy application of the "plain view" doctrine. Officer Hobbs testified that he went to Wood's home to investigate the battery charge. There was therefore evidence from which the court could have reason-

---

**2.** The parties offer conflicting arguments as to whether the plants were, in fact, "in plain view." Evidently, the place in the yard where they were found growing is at least partially concealed by shrubs ranging in height from four to six feet. Additionally, the side of the house at which they were growing was bordered by a large field which did not contain any houses. However, the record supports the following reasons upon which the trial court based its finding that the marijuana plants were in plain view.

"(a) The area in question was not protected by a fence, gate or other barrier.

(b) Although the quality of observation is unclear, there was a general ability to observe the area in question by looking over the hedges or by peering through the bushes, all while standing off-premises.

(c) The general tenor of William Wood's testimony suggests that the parties had not undertaken a clear course of action designed to limit access or protect their privacy. They used available screening 'for whatever protection it might give'. Privacy was more incidental than deliberate.

(d) Like all of us, defendants knew or should have known that an open yard might be crossed by neighbors, utility men, and children, and that any number of persons might walk into a backyard to see if the resident was there." Record at 75.

ably concluded that Hobbs was justified in being at the location. A possible suspicion that marijuana might be present does not destroy the "inadvertent" discovery in the context of the battery investigation. The possibility that Hobbs may not have been totally surprised by the discovery of the growing marijuana does not mean that it was not inadvertent for purposes of application of the plain view doctrine.

Evidence of Officer Hobbs's discovery of the marijuana plants was properly admitted.

## II. *Search Warrant*

■ Wood argues that the search warrant was defective because of recklessly false statements made by Detective Sollars relative to the credibility of the informant whose tip alerted police to the presence of marijuana at Wood's house.

In assessing the validity of a warrant, we look to the facts stated to the magistrate who issued it. *Mowrer v. State* (1983) 4th Dist. Ind.App., 447 N.E.2d 1129, 1133. Detective Sollars obtained the search warrant from the magistrate. Although no affidavit signed by Sollars appears of record, a certified transcript of the probable cause hearing provides an account of what he told the magistrate.

"[Magistrate]. And why is it that you're wanting to search [Wood's house] and what are you looking for?

[Sollars]. Uniform police officers earlier received information from a subject that there was a large quantity of marijuana growing in the back yard. Uniform police officers did go to that location and observed approximately twenty-five marijuana plants growing in the back yard. It looked to be a [sic] very well cultivated and growing very well. The information from the informant also said that the inside of the house contains a greenhouse full of equipment and paraphernalia and as well as many, many other plants growing inside.

[Magistrate]. Now you say that the officers actually had a chance to see the growing marijuana on the outside, themselves.

[Sollars]. Yes, Officer Derrick Hobbs did go up to the back of the house and visibly see the approximately twenty-five marijuana plants growing, himself.

[Magistrate]. With regard to the informant, do you have knowledge as to whether or not the informant has had a chance to see the contents of the house on the inside?

[Sollars]. [The informant] told Officer Hobbs [that the informant] had been in that house [very recently] and had seen the items mentioned.

[Magistrate]. This informant, has he proven to be reliable in the past?

[Sollars]. Yes, he has been used many times in the past.

[Magistrate]. He has proven to be reliable.

[Sollars]. Yes, sir." Record at 188–89.

Wood challenges issuance of the search warrant which led to entry into the house and seizure of various incriminating items of evidence. Her challenge asserts that the warrant was invalid, based upon both the alleged illegal discovery of the marijuana growing outside the house and upon false statements to the issuing magistrate as to the reliability of the informant.

We have previously decided that the discovery of the marijuana was not illegal.

It must be noted that Wood does not claim the information provided the police by the informant was in fact false. The challenge is, rather, foundational in nature, i.e., that Sollars did not have knowledge of the past reliability of the informant when he informed the magistrate otherwise.

Detective Sollars's representations to the magistrate notwithstanding, Officer Hobbs later recalled at the hearing upon the motion to suppress that the informant was not a person who had routinely provided criminal information to him. Wood contends that in light of Hobbs's testimony, "the search warrant was tainted ... by the recklessly false statement that the 'informant' was credible and routinely provided information to the police." Brief of Appellant at 8. However, Detective Sollars's

recollection of what Hobbs told him was somewhat different:

"[Court]. You were asked this question by the, whoever the deputy prosecutor was at the search warrant hearing ... Question: 'This informant, has he proven to be reliable in the past?' Answer: 'Yes, he has been used many times in the past.' Question: 'He has proven to be reliable.' Answer: 'Yes, sir.' How did you know that at the time?

[Sollars]. I was going on two premises, Your Honor, at that point. I was using Hobbs, himself, as an informant, because he was the one that had visually seen the marijuana growing on the outside. Also, he told me he had received information in the past from this person. I don't know about numerous times, but he had, and verified the marijuana growing from this time, also, from what they told him."

Record at 199–200.

The aforementioned representations appear to place Officer Hobbs's testimony in conflict with that of Detective Sollars on the question of whether Hobbs told Sollars that the informant had previously been used in that same capacity. However, when questioned later about the inconsistencies between his testimony and that of Detective Sollars, Officer Hobbs admitted that his recollection of what he had told Detective Sollars prior to the issuance of the search warrant may have been faulty:

"[Prosecutor]. All right. Is your recollection today of, of those conversations somewhat less than what it would have been when it had just happened?

[Hobbs]. Yes, it would." Record at 173.

In order to sustain her claim, it was incumbent upon Wood to show that the representations made to the magistrate were not merely negligently made or innocently mistaken. *Johnson v. State* (1985) Ind., 472 N.E.2d 892, 899.

Although the arguably conflicting testimonies of Sollars and Hobbs might be interpreted to reflect an assertion made by Sollars with reckless disregard for its accuracy, it may be that Officer Hobbs had merely forgotten that he indicated to Detective Sollars that he (Hobbs) had previous contact with the informant. Wood has not pointed to anything of record which proves, or even suggests, that Detective Sollars did not reasonably believe that what he stated at the probable cause hearing was, in fact, true. Wood thus has not sustained her burden to prove that Sollars's representations were knowingly or recklessly false.[3]

In any event, to the extent that the validity of the search warrant depends solely upon information from the informant, it is deficient. No where does the record reflect that the informant had provided reliable information in the past. At best, Officer Sollars merely indicated that Hobbs had said the informant was reliable.

■ The bare conclusory and hearsay statement that affiant was told by Officer X that the informant had provided reliable information will not suffice for the requirement of I.C. 35–33–5–2(b)(1) (Burns Code Ed.Supp.1991) that the affidavit "[c]ontain reliable information establishing the credibility of the source...." Nevertheless, the entirety of the information given to the magistrate by Officer Sollars fulfills the alternative requirement of the statute which authorizes issuance of a warrant if the information "establishes that the totality of the circumstances corroborates the hearsay." I.C. 35–33–5–2(b)(2).

Here, recitation by Detective Sollars that Officer Hobbs had personally viewed marijuana growing on the premises corroborated the informant's information.

In this sense, our case is not wholly dissimilar to *Minneman v. State* (1984) Ind., 466 N.E.2d 438, *cert. denied* (1985),

---

**3.** To be sure, the informant's information imparted to the issuing magistrate was multiple hearsay. The information here went from the informant to Hobbs to Sollars to the magistrate. However, information from an informant to Officer A to Officer B to the magistrate was held

valid for purposes of a warrant in *Spears v. State* (1978) 270 Ind. 12, 383 N.E.2d 282, and *Wells v. State* (1979) 1st Dist. Ind.App., 397 N.E.2d 1250. We do not deem it appropriate in this instance to hold otherwise.

470 U.S. 1030, 105 S.Ct. 1402, 84 L.Ed.2d 789, in which the court considered a misrepresentation by the affiant officer as to his personal interviews of the two persons providing information. In fact, the affiant did not speak with both persons but relied in part upon information provided by a different police officer. The court held that such misstatement was not so material to the matter of probable cause as to invalidate the warrant.

Wood does not make an argument that a warrant for the inside of the house was not justified by the presence of the growing marijuana in the back and side fenced and hedged yard attended by a pit bulldog. In any event, there was sufficient nexus between the cultivated marijuana patch and the residence itself as to justify an inference that Wood not only knew of the presence of the marijuana but was likely to have a quantity of the harvested weed inside the house. In this regard, the connection is not so tenuous as those in *Kail v. State, supra,* 528 N.E.2d 799, and in *State v. Anspach* (1984) 298 Or. 375, 692 P.2d 602 (relied upon in *Kail*). Despite remote connections between the defendants and growing marijuana, both the *Kail* and *Anspach* courts validated search warrants for the residences themselves. While we might not have agreed with the opinions in these cases, we nevertheless hold the instant warrant valid under the circumstances.

The judgment is affirmed.

BAKER, J., concurs.

SHIELDS, J., files separate opinion concurring in result in part.

SHIELDS, Judge, concurring in result in part.

I agree with the majority that the trial court properly overruled Wood's objection to the evidence pertaining to the marijuana found outside and inside her house. The trial court properly concluded that Wood did not have a reasonable and actual expectation of privacy in the yard by the south side of her house and, therefore, the marijuana plants were growing in "open view." Thus, a search did not occur and any fruits of that search are admissible, including the use of those fruits as probable cause for the subsequently issued search warrant.

Also, the inadvertence doctrine is not a requirement of Art. 1, § 11 of our Indiana Constitution. The Indiana cases reciting the inadvertence doctrine rely upon cases decided under the fourth amendment of the United States Constitution. Therefore, when the Supreme Court disavowed the plurality decision of *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 in *Horton v. California* (1990), 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112, the inadvertence doctrine ceased to exist.

I concur in Issue II.